[No. D053261. Fourth Dist., Div. One. June 16, 2009.]

THE PEOPLE, Plaintiff and Appellant, v.
GREGORY LOUIS MIRENDA, Defendant and Respondent.

### COUNSEL

Bonnie M. Dumanis, District Attorney, Laura E. Tanney, Craig E. Fisher and James E. Atkins, Deputy District Attorneys, for Plaintiff and Appellant.

Libby A. Ryan, under appointment by the Court of Appeal, for Defendant and Respondent.

### OPINION

**HUFFMAN, Acting P. J.**—We are presented with a case where 26 years passed between the time the criminal charges were filed and the time when the prosecution actually started. The extraordinary delay in this case is made more remarkable because defendant was actually arrested on the criminal complaint in 1982 and agreed to waive extradition. It was the prosecution that declined to return defendant for trial. Defendant was then released and the

prosecution changed its arrest warrant to "California only," apparently to prevent defendant from again being arrested outside this state. Thereafter, the prosecution took no steps to prosecute this case until defendant, notified by the Social Security Administration of the existence of the warrant, contacted San Diego authorities.

We find the quarter-century delay not only remarkable, but on this record, we find it denied defendant the right to a speedy trial under the California Constitution.

In this case, we reject the People's appeal and affirm the trial court's judgment of dismissal entered after granting Gregory Louis Mirenda's motion to dismiss his 2007 prosecution for the March 1981 attempted murder and assault with a deadly weapon on Willie A. Villagran based on prejudicial and unjustified preaccusation delay. In doing so, we find the People's contention the trial court abused its discretion in hearing Mirenda's motion pretrial meritless and conclude substantial evidence supports the trial court's decision the case must be dismissed because Mirenda's constitutional rights to a speedy and fair trial would be violated by proceeding to trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 1981, Mirenda was involved in an altercation with his roommate Villagran, which ended with Mirenda shooting Villagran in the chest. After a brief investigation, the San Diego District Attorney (DA) filed a felony complaint on March 20, 1981, charging Mirenda with attempted murder (Pen. Code, §§ 187, subd. (a), 664), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and alleging as to both counts that Mirenda personally used a firearm and inflicted great bodily injury upon Villagran (Pen. Code, §§ 12022.5, 12022.7). On April 2, 1981, the DA obtained a warrant for Mirenda's arrest, but could not locate him.

On August 17, 1982, Mirenda was arrested in Pennsylvania on the outstanding warrant. After receiving notification of the arrest, the DA attempted to locate Villagran but was unable to do so. Although Mirenda waived extradition and agreed to return to San Diego to face the charges filed against him, the DA declined to extradite Mirenda because it decided the prosecution of the case could not go forward without Villagran. When Mirenda was released from custody on the fugitive warrant nine days later, his public defender in Pennsylvania told him that the charges had been dismissed.

In 2007, when Mirenda applied for Social Security disability benefits in Arizona, he was informed that he needed to clear a California warrant for his

arrest. He immediately contacted the Office of the San Diego County Public Defender (PD) to inquire about the warrant. When a paralegal at the PD could not locate any file there or at the San Diego County courthouse, she contacted the DA's office about the matter. The DA's office confirmed that Mirenda had been arrested out of state and held on the outstanding warrant issued April 2, 1981, but advised that he had been released because the victim could not be located and that the warrant had been changed from "no extradition" to "California Only."

After the phone call, the DA successfully located Villagran and resumed the prosecution of Mirenda. The DA obtained a current warrant for Mirenda's arrest on September 26, 2007, and he was arrested in Arizona and extradited to California where he was booked into San Diego County jail on October 17, 2007. Mirenda entered pleas of not guilty to the charges in the felony complaint at arraignment on October 22, 2007.

At a November 5, 2007 status conference, Mirenda waived the 10-day and 60-day statutory time periods for his preliminary hearing, which eventually was held on January 17, 2008. At that time, Villagran testified that on March 2, 1981, while he and Mirenda worked as cabdrivers for the same company, he had been roommates with Mirenda and his young son for about a month. That night when Villagran returned home from a concert, he found Mirenda on the sofa with a woman, named Kim Phillips (now Kim Madruga), who was the wife of one of Villagran's friends. Villagran became upset with what he saw because his friend had earlier asked him whether he had seen his wife, and Mirenda "tried to order [him] around."

When the argument escalated, Villagran suggested that Mirenda move out of his house. Mirenda responded by grabbing his son, who had come into the living room after being awakened by all the noise, and returned to the bedroom with his son to pack all his belongings. When Mirenda came back into the living room with his belongings, he was holding a .22 rifle and pointed it at Villagran, who asked, "What are you going to do, shoot me?" Mirenda then shot Villagran in the chest and the bullet went through and landed in the wall. When Villagran collapsed, Mirenda kneeled over him, told him he would be all right, grabbed his boy and Madruga, and left the house. Villagran called the operator for assistance, who immediately contacted the police and paramedics who arrived shortly thereafter at Villagran's home.

Villagran testified he suffered a collapsed lung which needed surgery right away as a result of the shooting. He was in the hospital for about four days and remained under a doctor's supervision for some time after his release. Villagran identified Mirenda at the preliminary hearing as the person who had

shot him in 1981. Villagran denied that he had had a gun in the house or that he had made any threats toward Mirenda or Madruga at the time of the conflict with Mirenda.

On cross-examination, Villagran could not remember how old Mirenda's son had been 26 or 27 years earlier, but believed he had been only a "toddler" at that time and he believed they had lived with him only a month or less. He also did not think that Mirenda was working at the time they were living with him. Villagran conceded he drank about four or five beers at the concert the night of the shooting before returning home and finding Mirenda on the sofa with Madruga, who was "not clothed." Villagran said the police recovered the bullet from the wall and showed it to him, but he did not know what they did with it afterwards.

Although the DA had served Madruga with a subpoena to appear at the preliminary hearing as an eyewitness to the shooting, she failed to appear. Nonetheless, the magistrate held Mirenda to answer for the charges, finding probable cause to believe the offenses in the complaint had been committed and that Mirenda might be "guilty thereof."

On February 4, 2008, the DA filed a two-count information charging Mirenda with the same charges and allegations as alleged in the felony complaint. At the February 5, 2008 arraignment, Mirenda again entered pleas of not guilty to the charges and allegations and waived statutory time for trial.

On April 10, 2008, Mirenda filed his motion to dismiss all charges relating to the shooting of Villagran due to prejudicial and unjustified preaccusation delay and a declaration of his attorney in support of dismissal. In addition to presenting the above time line in his motion, Mirenda noted that since he had been released from custody on the original arrest warrant in 1982, he had remained in Pennsylvania until 1984, when he moved to El Cajon, California, for about six months before moving to Las Vegas, Nevada, where he stayed for the next 10 years before then moving to Bullhead City, Arizona. When he lived in Nevada, Mirenda legally changed his name to Greg J. Lombardi, but kept the same Social Security number that he had had his entire life. In Nevada, he worked at various casinos, including working as an officer in charge of security, which required police and Federal Bureau of Investigation clearances. At no time was he ever told about a fugitive warrant for him. In 1994, he was arrested for attempted murder in Arizona after a fight in which he was shot in the eye. During the 12 and one-half years he spent in Arizona state prison, no hold was ever placed on him for any outstanding warrants. It was only after he was released on parole and sought Social Security benefits that he learned there was an outstanding California warrant for his arrest.

Mirenda argued that the prejudice to him caused by dimming of witnesses' memories, witnesses' death or disappearance, and the loss or destruction of material physical evidence during the 27-year preaccusation delay could only be offset by a showing of good cause or justification, and that the DA's office could not point to any justification for the lengthy delay other than their decision not to pursue the matter after he was first arrested in this case in 1982.

Mirenda specifically claimed that in the intervening 27 years since the 1981 shooting, only four faded Polaroid photographs of Villagran's living room where the shooting occurred were available as physical evidence and that the other physical evidence, including the bullet, had been destroyed or was missing. Mirenda also noted that the doctor who treated Villagran was now dead, that there were no medical records other than a one-page letter from the now deceased doctor regarding Villagran's injuries and subsequent medical care, and that the names of any of the emergency personnel who treated Villagran and took him to the hospital after the shooting were not included in any of the police reports. Mirenda additionally noted that neighbors of Villagran's who had been interviewed by police right after the shooting were now missing and could not be questioned as to what they might have heard that night. More importantly, the detective who had interviewed Madruga, the only independent eyewitness to the shooting, was now dead. Because Madruga's statements to the detective were different from those she had recently given to a DA investigator, it would be impossible to corroborate her earlier statements or establish which set of statements was true for purposes of establishing any defense.

Mirenda further claimed that the police investigation of the shooting, which was essentially concluded on the night of the crime, with all evidence collected that night except for the victim's medical aftercare, was shoddy because police failed to take measurements of the crime scene, note any blood spatter evidence, or preserve the bullet, all items of evidence from which the trajectory of the bullet and the distance of the shooting might be determined and which could provide some arguments for the defense to impeach the victim and to negate any specific intent element. The police and DA's office also failed to keep track of the victim in the case and had not shown any due diligence in finding Villagran between 1982 and 2007 when they decided to reopen the prosecution of this case after Mirenda contacted the PD to try to clear the "California only" warrant.

Based upon the above showing of prejudice due to the lengthy delay, Mirenda requested the court to hear the motion to dismiss pretrial rather than after trial, because he was not relying on the prejudice inherent in any delay and the court would be in no better position after the trial to determine prejudice because all the missing evidence and witnesses were now before the court.

In opposition, the DA noted that in addition to the facts presented by Mirenda in his motion, the San Diego County Marshal's office had attempted to locate Mirenda in 1999, but was unsuccessful and that when Madruga was interviewed in 2008, she had stated that the shooting occurred when Villagran made inappropriate sexual comments to her and Mirenda defended her honor and not when Mirenda acted in self-defense. The DA requested the court reserve the motion to dismiss until after the trial because actual prejudice to Mirenda's right to a fair trial could only be properly assessed at that time.

As to the merits of the motion to dismiss, the DA claimed that this matter concerned only Mirenda's federal due process rights and state speedy trial rights because the delay was from the filing of the felony complaint in March 1981 until Mirenda was arraigned on the felony complaint on October 22, 2007 (state speedy trial rights), or until the information was filed on February 4, 2008 (federal due process rights). The DA argued that the delay in this case did not violate Mirenda's federal due process rights because it was not an intentional device to gain a tactical advantage over Mirenda, but rather was caused by Mirenda's fleeing the jurisdiction and the inability to prosecute him when he was found in Pennsylvania in 1982 without the testimony of Villagran who could not be located at that time. The DA further argued that because there is no presumption of prejudice from delay for state speedy trial claims, Mirenda must show actual prejudice, which he failed to do.

The DA asserted that Mirenda's claims of prejudice were merely speculative because both Villagran and Madruga were available to testify at trial that Mirenda had shot Villagran, and Villagran could also testify about his own medical condition, about Mirenda's location when he fired the rifle at him, and about where the bullet entered and exited his chest. Because no medical record could alter the fact that Mirenda had shot Villagran, the DA posited that the missing medical evidence was irrelevant to any defense. Nor did the DA believe that there were any witnesses who were missing who could provide any beneficial character testimony for Mirenda in light of the fact he had served a prison term in Arizona for attempted murder. The DA claimed that any inadequacies or incompleteness in the initial investigation of this case were Mirenda's own fault because he fled the jurisdiction and did not perform his own investigation of the crime scene, and that the problems in the collection of evidence could not be attributed to the delay in this case because collection was completed shortly after the crime was committed in March 1981.

The DA argued that because Mirenda had failed to show actual prejudice by the delay, there was no need to balance any justification the DA had for the delay. However, the DA asserted there was justification for the delay, initially because Mirenda had fled the jurisdiction, which was inconsistent

with self-defense and wanting a speedy trial, and then from 1982 until 2007 because Villagran could not be located to go forward with the prosecution. The DA also noted that in 1999 an attempt to locate Mirenda had failed.

The DA requested that if the court found a violation of Mirenda's state constitutional speedy trial rights, that it would fashion a remedy as a sanction other than dismissal, similar to that in *People v. Conrad* (2006) 145 Cal.App.4th 1175, 1185–1186 [52 Cal.Rptr.3d 233] (*Conrad*) to address the violation.

At the May 5, 2008 hearing on the dismissal motion, after noting it had reviewed the defense motion, the DA's opposition, the preliminary hearing transcript, and numerous cases regarding the issues presented by the motion, the trial court indicated it was inclined to grant the motion. The court was "very concerned about the period of time and the apparent lack of effort on the part of the People to track down Mr. Mirenda after they had him in custody pursuant to the warrant." The court noted that from the People's own papers, there was a period of 17 years between deciding not to extradite Mirenda in 1982 and 1999 when the marshal attempted to locate him. Then from 1999 until 2007, there was no justification given for not trying to locate Mirenda.

Although the court appreciated the technical distinctions between the due process and speedy trial issues in California versus federal jurisdictions, it found instructive the dicta in *Doggett v. United States* (1992) 505 U.S. 647 [120 L.Ed.2d 520, 112 S.Ct. 2686] (*Doggett*), a federal speedy trial case, where there had been a delay of eight and one-half years in bringing the defendant to trial, which is consistent with dicta in some of the California cases, that "at some point the delay becomes so long that efforts to show specific prejudice become meaningless because you don't even know what the prejudice may be. [¶] There is so much time elapsed that it's impossible to identify what the impacts would be of that delay on a trial, a fair trial." The court explained that it was characterizing its decision as being based on state due process rights, although it understood that the balancing and weighing standard was the same for state speedy trial rights, and that it was in essence "presuming that there is that type of prejudice [identified in *Doggett* and the California cases] because of that [lengthy] delay." The court then asked the prosecutor to respond.

The prosecutor reiterated the time line in the opposition papers, stating he was unaware of any efforts to locate Mirenda from 1982 until 1999 when there was "some type of search by the San Diego Marshal's office to locate the defendant, and then the next that I know of any efforts in looking at this file at all are when we receive contact from the [PD's] office informing us

that Mr. Mirenda had contacted them and was trying to find out what was going on with this warrant because it was affecting his ability . . . to get disability. At that point we went through and looked at it." The prosecutor recognized the lengths of delay were quite long, but argued there had been no showing of actual prejudice because there was no physical evidence missing in this case and there were "three people there at the time [of the shooting]; all three of them are available to testify." In addition, a police officer who had arrived at the scene was available to testify about the crime scene, photographs that were taken of the wall area that was hit by the bullet after it went through Villagran, and about the information in his police report that noted the bullet was not recovered from the wall.

Although the prosecutor conceded that the detective who had obtained Madruga's original statement was dead, he represented that the DA was willing to stipulate "to what the full extent of [Madruga's] original statement was." When the court inquired as to Madruga's willingness to testify because she had failed to appear at the preliminary hearing and a bench warrant had been issued for her arrest, the prosecutor explained that she had been cooperative "up to a point," had disappeared "on us for a little while," but was now cooperating again and had even talked with defense counsel.

As to medical records, the prosecutor agreed that the only one available was "a one-page letter written by the treating physician describing a through-and-through wound of Mr. Villagran through his upper chest, and it stated that he was recovering fine and was supposed to meet him again in a couple of weeks."

When asked to respond to the matter, defense counsel also restated the points in her motion papers regarding the lack of medical record evidence or personnel from which information to impeach Villagran about his injuries could be obtained, and the absence of anyone to impeach Villagran about the bullet or challenge the police officer about not finding the bullet. Defense counsel complained that another police officer who had drawn a sketch of the crime scene the night of the shooting was not available to talk to nor was the detective who had taken Madruga's original statement, claiming there was no one to either corroborate or impeach her statement.

When defense counsel mentioned that the defense had had no opportunity to talk to the neighbors noted in the police report, the court interrupted her, making it clear on the record that it was not basing its decision on whether the police investigation of the crime scene or their interviews of the neighbors had been adequate. The court did not find that information relevant to the motion to dismiss because it existed at that time regardless of the delay and, because Mirenda had left the jurisdiction, it was speculative whether he

would have been able to find the neighbors even if he had been extradited in 1982 when arrested on this case in Pennsylvania.

After defense counsel represented that Mirenda had told her that Villagran "possibly had a gun," which she could not confirm, and asserted prejudice to present a defense because the DA did not try to find Mirenda or locate Villagran, who had both gone on with their lives during the lengthy delay, the court asked counsel to clarify several points, one being Mirenda's name change in 1984, and the other being when he learned of the outstanding California warrant. Defense counsel responded that Mirenda had legally changed his name to Greg J. Lombardi in 1984, but had kept his same Social Security number, and that he had learned about the outstanding warrant when "[h]e filed for social security disability and was told he had a warrant in California. . . ."

Defense counsel additionally commented that due to the outstanding warrant Mirenda was prejudiced by not being able to obtain those disability benefits, although such did not impact his defense, and had he known about the warrant while he was in prison in Arizona he could have addressed it earlier under the interstate detainer act. The court found this latter assertion speculative, and accepted the prosecutor's representation that the case had never been dismissed but only that the warrant had been changed to "California only."

The court then noted that after the DA decided not to extradite Mirenda because the victim could not be found, there was absolutely nothing done to find either the victim or Mirenda until 1999, which goes "far beyond what would be the normal investigatory process, as well as the recognition by case law, both federal and state, as to due process rights and speedy trial rights, that the prejudice is almost impossible for the defense to identify, because it has been so long, as to what the impacts would be on the trial." The court recognized that under *People v. Martinez* (2000) 22 Cal.4th 750 [94 Cal.Rptr.2d 381, 996 P.2d 32] (*Martinez*) it had "the capability of doing the trial, . . . but it seem[ed to the court] that if you can't determine what the prejudicial impacts would be on the trial, having the trial is kind of an attempt to bootstrap it in, and [the court would not] even know whether or not it had become prejudicial even if [the court] did the trial because you wouldn't know what the impacts of this delay would be." The court opined it was "impossible to quantify what the prejudice might be because [the delay here was] so long, that having the trial doesn't seem to help [the court] in any way."

Although there was no evidence other than argument regarding Mirenda's awareness of the outstanding warrant, the court accepted his position that he

did not know about the warrant because of the DA's decision not to extradite him and prosecute the case in 1982. The court found no support for the People's position that Mirenda was trying to avoid prosecution, because it could not find any "active efforts on the part of the [DA]" to subsequently locate Mirenda or Villagran before this recent prosecution of the case, other than the attempt to locate Mirenda in 1999, about which it would not speculate as to why he could not be found at that time even though he was then in Arizona custody.

After hearing further from the parties, the court ruled it was going to grant the motion, finding there had "been a violation of Mr. Mirenda's due process rights under the California Constitution [and] suggest[ed] that it rises to the level of a speedy trial violation both under California and federal law." Although the court understood that the federal speedy trial rights did not come into play until the information was filed, it believed "that the length of time here is such that it rises to a constitutional level because of the fact that there was no . . . due diligence on the part of the prosecuting agency in its efforts to try and find Mr. Mirenda after they had, in fact, had him released . . . which . . . at the time was an appropriate decision to not extradite him because they [had] been unable to find the victim. [¶] At that point, however, . . . the clock started to run, and it required the [DA] and/or prosecuting agency to try and do everything possible to locate not only the victim but Mr. Mirenda also to proceed with a trial that . . . would be consistent with Mr. Mirenda's, as well as the People's, constitutional . . . rights, and . . . there's been such a time delay that that . . . cannot occur at this stage. [¶] With that, [the court noted it was dismissing] this case [with prejudice]."

When the prosecutor asked the court whether its decision was based on *Doggett, supra,* 505 U.S. 647, the court explained its decision was not specifically based on *Doggett* because that was a federal speedy trial case and this was really a due process issue for which it relied on the reasoning in the dicta in *Doggett* regarding a delay at some point becoming so significant that there could be no fair trial.

The People have timely appealed from the court's order and judgment of dismissal of the information in its entirety in this case on constitutional due process and speedy trial grounds.

### DISCUSSION

On appeal, the People contend the trial court abused its discretion in hearing Mirenda's dismissal motion pretrial, erred in finding a violation of Mirenda's state due process rights, and the preaccusation delay did not

violate Mirenda's federal due process rights or speedy trial rights or his state constitutional speedy trial rights, because he failed to show actual prejudice from the delay or that it was an intentional device by the prosecution to gain a tactical advantage over him. Alternatively, the People assert that if a violation of Mirenda's state constitutional speedy trial rights is shown, then the court abused its discretion in ordering dismissal rather than fashioning a remedy for the purported lost evidence in a manner that affords Mirenda due process and a fair trial while allowing the prosecution to go forward, similar to what was done in *Conrad, supra,* 145 Cal.App.4th at page 1186. As we explain, the court did not abuse its discretion in hearing Mirenda's motion pretrial, and substantial evidence supports the trial court's decision the information and this case in its entirety must be dismissed.

## A. *Pertinent Law*

In *Scherling v. Superior Court* (1978) 22 Cal.3d 493 [149 Cal.Rptr. 597, 585 P.2d 219] (*Scherling*), our Supreme Court examined the scope and application of the right to a speedy trial under state and federal law and determined that "under California as well as federal law, the right to a speedy trial clearly attaches after an arrest or the filing of an indictment or information. (*United States* v. *Marion* [(1971)] 404 U.S. 307, 320 [30 L.Ed.2d 468, 92 S.Ct. 455].) [¶] Unlike federal law, however, this state has extended the right to the preindictment and prearrest stage, holding that it attaches under article I, section 15, of our Constitution after a complaint has been filed. [Citations.] But the consequence of a violation depends upon the stage at which a violation of the right occurs. The right to a speedy trial following the filing of an indictment or information and the time limitations applicable thereto are set forth by statute [citation] and a violation of the statute is presumed to be prejudicial. [Citation.] A violation at a prior stage depends upon a balancing of the prejudicial effect of the delay and the justification therefor. [Citations.]" (*Scherling, supra,* 22 Cal.3d at p. 504, fns. omitted.) "No presumption of prejudice arises from delay after the filing of the complaint and before arrest or formal accusation by indictment or information [citation]; rather, the defendant seeking dismissal must affirmatively demonstrate prejudice [citation]." (*Martinez, supra,* 22 Cal.4th at p. 767.)

" 'Even a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal. . . .' [Citation.]" (*Conrad, supra,* 145 Cal.App.4th at p. 1185.) However, "[t]he trial court must engage in the balancing process only if the defendant has shown actual prejudice. [Citation.] The reason is simple: 'If defendant fails to show prejudice, the court need not inquire into

the justification for the delay since there is nothing to "weigh" such justification against.' [Citation.]" (*Craft v. Superior Court* (2006) 140 Cal.App.4th 1533, 1541 [44 Cal.Rptr.3d 912].)

The same balancing test is used in determining claims that preaccusation delay resulted in a denial of due process. (*People v. Catlin* (2001) 26 Cal.4th 81, 107 [109 Cal.Rptr.2d 31, 26 P.3d 357] (*Catlin*); *People v. Boysen* (2007) 165 Cal.App.4th 761, 772 [62 Cal.Rptr.3d 350] (*Boysen*).) As our high court in *Catlin* stated, "Delay in prosecution that occurs before the accused is arrested or the complaint is filed may constitute a denial of the right to a fair trial and to due process of law under the state and federal Constitutions. A defendant seeking to dismiss a charge on this ground must demonstrate prejudice arising from the delay. The prosecution may offer justification for the delay, and the court considering a motion to dismiss balances the harm to the defendant against the justification for the delay. [Citations.] A claim based upon the federal Constitution also requires a showing that the delay was undertaken to gain a tactical advantage over the defendant. [Citations.]" (*Catlin, supra*, 26 Cal.4th at p. 107.)

█ In *People v. Nelson* (2008) 43 Cal.4th 1242 [78 Cal.Rptr.3d 69, 185 P.3d 49] (*Nelson*), our Supreme Court recently noted that "the exact standard [for due process violations] under [the federal] Constitution is not entirely settled, [but it is clear] that the law under the California Constitution is at least as favorable for [the] defendant in this regard as the law under the United States Constitution." (*Id.* at p. 1251.) After reviewing the relevant federal and state laws regarding delay and the circumstances under which it would be found unjustified and prejudicial, the court in *Nelson* concluded that "under California law, negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process." (*Id.* at pp. 1254–1255.) The court in *Nelson* observed, however, that "whether the delay was negligent or purposeful is relevant to the balancing process. Purposeful delay to gain an advantage is totally unjustified, and a relatively weak showing of prejudice would suffice to tip the scales towards finding a due process violation. If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation." (*Id.* at p. 1256.)

█ Among other things, " '[p]rejudice [for due process or speedy trial violation claims] may be shown by loss of material witnesses due to lapse of time [citation] or loss of evidence because of fading memory attributable to the delay.' [Citation.]" (*Catlin, supra*, 26 Cal.4th at p. 107.) The overarching theme is that the loss of such evidence, especially where the defendant or victims cannot independently recall details of the crime, makes it difficult or impossible for the defendant to prepare a defense thus showing prejudice.

(See *People v. Pellegrino* (1978) 86 Cal.App.3d 776, 780 [150 Cal.Rptr. 486] (*Pellegrino*).) As we recognized in *Boysen, supra,* 165 Cal.App.4th 761, because "due process is ultimately tied to the fundamental conceptions of justice that lie at the base of our civil and political institutions and which define the community's sense of fair play and decency" (*id.* at p. 774), it is also shown to be "properly offended when, with little or no justification, the government waits decades to bring a prosecution and that delay has demonstrably placed the defense at a profound and perhaps fatal disadvantage" (*ibid.*).

█ In addition, although a federal speedy trial case, the reasoning in *Doggett, supra,* 505 U.S. 647, is instructive on the issue of showing prejudice for analyzing either speedy trial or due process violations as the constitutional guarantees "converge in protecting the same interest of the accused" for a fair adjudication. (*Martinez, supra,* 22 Cal.4th at p. 768.) The court in *Doggett* noted "that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' [Citation.] And though time can tilt the case against either side, [citations], one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment [speedy trial] claim . . . , it is part of the mix of relevant facts, and its importance increases with the length of the delay." (*Doggett, supra,* 505 U.S. at pp. 655–656.)

If a defendant meets his initial burden of showing prejudice from a preaccusation delay for either a due process or state constitutional speedy trial claim, "the prosecution must show justification for the delay. If the prosecution does that, the trial court must balance the prejudice to the defendant resulting from the delay against the prosecution's justification for the delay. [Citation.]" (*People v. Lowe* (2007) 40 Cal.4th 937, 942 [56 Cal.Rptr.3d 209, 154 P.3d 358]; see *Martinez, supra,* 22 Cal.4th at pp. 766–767.)

█ In so balancing the interests, "it is important to remember that prosecutors are under no obligation to file charges as soon as probable cause exists but before they are satisfied that guilt can be proved beyond a reasonable doubt or before the resources are reasonably available to mount an effective prosecution. Any other rule 'would subordinate the goal of orderly expedition to that of mere speed.' [Citation.]" (*Boysen, supra,* 165 Cal.App.4th at p. 777.) On the other hand, " '[t]he [prosecutors] cannot simply place gathered evidence . . . on the "back burner" hoping that it will some day simmer into something more prosecutable . . . .' " (*Pellegrino, supra,* 86 Cal.App.3d at p. 781.) Nor may "[t]he requirement of a legitimate reason for

the prosecutorial delay . . . be met simply by showing an absence of deliberate, purposeful or oppressive police conduct. A 'legitimate reason' logically requires something more than the absence of governmental bad faith. Negligence on the part of police officers in gathering evidence or in putting the case together for presentation to the district attorney, or incompetency on the part of the district attorney in evaluating a case for possible prosecution can hardly be considered a valid police purpose justifying a lengthy delay which results in the deprivation of a right to a fair trial." (*Penney v. Superior Court* (1972) 28 Cal.App.3d 941, 953 [105 Cal.Rptr. 162].)

 As we noted in *Boysen, supra*, 165 Cal.App.4th 761, "[t]he balancing task is a delicate one, 'a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. [Likewise], the more reasonable the delay, the more prejudice the defense would have to show to require dismissal.' [Citation.]" (*Id.* at p. 777.)

Whether preaccusation delay is unreasonable and prejudicial to a defendant is a question of fact. (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 911–912 [55 Cal.Rptr.2d 404].) If the trial court concludes the delay denied the defendant due process or his constitutional speedy trial rights, the remedy is generally dismissal of the charge. (*Id.* at p. 912; *Boysen, supra*, 165 Cal.App.4th at p. 777.) "A trial court has discretion[, however,] to fashion a remedy [other than dismissal] when the prosecutor's conduct has resulted in [an identifiable] loss of evidence favorable to the defense. [Citations.]" (*Conrad, supra*, 145 Cal.App.4th at p. 1185.)

We uphold the trial court's ruling or decision on appeal if it is supported by substantial evidence. (*People v. Mitchell* (1972) 8 Cal.3d 164, 167 [104 Cal.Rptr. 348, 501 P.2d 916].) Moreover, "[w]e may sustain the trial court's *decision* without embracing its *reasoning*." (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529 [40 Cal.Rptr.3d 422].) If the court's ruling or decision is " ' " " 'right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" [Citation.]' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 972 [86 Cal.Rptr.2d 243, 978 P.2d 1171] (*Smithey*).)

Finally, when a defendant brings a motion to dismiss based on preaccusation delay, it is within the discretion of the trial court to rule on the motion before, during or after trial. (*Martinez, supra*, 22 Cal.4th at p. 769; *Boysen, supra*, 165 Cal.App.4th at pp. 781–782.) The court's ruling in this regard will be sustained on review unless it falls outside the bounds of reason. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226 [9 Cal.Rptr.2d 628, 831 P.2d 1210].)

### B. *Analysis*

At the outset, we note the parties are in agreement this matter concerns only Mirenda's federal due process rights and his state speedy trial rights because the delay complained of commenced on the filing of the felony complaint against him in March 1981 until he was arraigned on that complaint in October 2007 or until the information was filed in February 2008. Although the trial court stated it was basing its decision on state due process grounds, as noted above, we review the court's decision and not its reasoning in determining whether the decision is supported by substantial evidence under any theory applicable to the case. (*Smithey, supra*, 20 Cal.4th at p. 972.) Having done so here in light of the facts presented and the law regarding state constitutional speedy trial rights and federal due process rights concerning preaccusation delay, we conclude the trial court's decision to grant Mirenda's motion to dismiss is supported by substantial evidence.

Although the trial court did not expressly state Mirenda had presented evidence of actual prejudice caused by the delay of more than a quarter of a century before the People arraigned him in California for the attempted murder and assault with a deadly weapon on Villagran in 1981, it necessarily found Mirenda had done so because it specifically stated it had struggled with the competing interests of the parties in applying the balancing test, which it recognized was the same for due process and speedy trial violations. If Mirenda had failed to make a showing of any prejudice, we presume the court would not have engaged in the required balancing test. And, while at first blush it appears from the parsed portions of the hearing transcript singled out by the People that the court may have presumed prejudice solely based on the length of the delay, a full reading of the transcript reveals otherwise. The record shows the court was merely expressing the real problems inherent in any prosecution of a case like this after such a long time which is caused by missing physical evidence and witnesses and the dulling of memories. That the court recognized it was difficult to articulate the actual prejudice to Mirenda caused by the lengthy delay does not negate the fact that it necessarily found that Mirenda had shown enough prejudice to require the prosecution to justify the delay for the balancing test.

Among other things, Mirenda had presented evidence and argument that the detective who had interviewed Madruga, the only independent eyewitness to the shooting, had died and was unavailable to either corroborate or impeach Madruga, whose story of the incident had recently changed. It appears from the representations of counsel, which were not contested, that Madruga's earlier statement regarding Villagran's making movements toward Mirenda before the shooting, would have been helpful to a defense of self-defense or at least provided some defense to the element of specific

intent to kill during a heated argument. Because " '[a]ttorneys are officers of the court, and " 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath . . .' " ' [citation]" (*People v. Mroczko* (1983) 35 Cal.3d 86, 112 [197 Cal.Rptr. 52, 672 P.2d 835], disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11]), this undisputed representation of facts, coupled with the preliminary hearing transcript showing that Villagran's memory was unclear, especially during cross-examination, regarding circumstances the night of the crime, provides credible evidence that prejudice to Mirenda has occurred by the preaccusation delay in his prosecution (see *Catlin, supra,* 26 Cal.4th at p. 107).

Although the court found the delay in prosecution justified until 1982 when the People found Mirenda in Pennsylvania because he had fled the jurisdiction, the court found it significant that the People had done nothing in this case to prosecute him after that time. The court's determination that the delay in prosecuting Mirenda from that time until 2007 or 2008 was unjustifiable under the circumstances of this case is clearly supported by the record. The prosecutor conceded at the motion hearing that nothing had been done by the DA's office from 1982 until Mirenda contacted the PD's office in San Diego to get information on the outstanding warrant preventing him from obtaining disability benefits and the PD in turn contacted the DA's office about the matter. Although the prosecutor noted that the San Diego County Marshal's Office had unsuccessfully tried to locate Mirenda in 1999, he was unable to explain the circumstances of why Mirenda was sought at that time because his office was not trying to locate Mirenda then. The prosecutor only suggested that Mirenda might be the cause of the delay because he had legally changed his name in 1984. However, this is not a reasonable justification for any delay because Mirenda had kept his same Social Security number, and the DA's office had not tried to locate him during the lengthy delay. It is significant that the Social Security Administration was able to quickly establish the existence of the California warrant, presumably from Mirenda's Social Security number.

As noted above, even " 'a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial.' " (*Boysen, supra,* 165 Cal.App.4th at p. 777.) Here, there was absolutely no justification proffered other than Mirenda had fled the jurisdiction. There was no justification at all offered regarding the over 25-year delay since that time. The People did not attempt to show that they tried to locate either Villagran or Mirenda during the lengthy delay, until Mirenda essentially contacted them.

The People fail to appreciate that in 1982, Mirenda had been arrested on the felony warrant issued in this case in 1981 and the DA's office made an

intentional tactical decision at that time not to extradite Mirenda for prosecution of this case even though he had waived extradition. In fact, the People not only declined to extradite Mirenda, they changed his arrest warrant to "California only" thereby preventing the execution of the warrant outside of this state. The impact of this action was to effectively "wall off" the State of California so that there was no risk that Mirenda would again be apprehended outside the state. Ironically, had he been arrested in California in 1982, the prosecution would have been required to dismiss the complaint. Under the same facts of no action to follow up this case, the statute of limitations would have expired long ago.

■ Although the victim, Villagran, could not be located in 1982, the case was then ripe for prosecution because the investigation was complete. All the evidence of the crime had been collected, the identity of the shooter was known, statements of the victim and eyewitness were taken and included in various police reports of the incident, and the treating physician was alive. Although we appreciate that prosecutors are under no obligation to proceed with a case before they are satisfied that guilt can be proved beyond a reasonable doubt or before all the resources are reasonably available, here charges were in fact filed and a warrant issued in 1981. After the prosecution declined to return Mirenda to California in 1982 and changed the arrest warrant to California only, no attempt was made to prosecute this case until 2007. The lack of any justification for the delay in this case after 1982 tips the balance in favor of finding a violation of Mirenda's constitutional due process and speedy trial rights and supports the trial court's decision to dismiss the prosecution against him based on preaccusation delay.

Moreover, on this record, the trial court was within its discretion to rule on the motion to dismiss before trial. The delay here was lengthy and the prejudice to Mirenda arose from the death of important witnesses, the irreparable fading of memory, and the complete inability to mount a defense. As the trial court reasonably concluded, a lengthy and expensive trial would not likely provide anything more than what it had before it for the motion, so that nothing would be gained by delaying its ruling on the motion to dismiss until the end of trial. No abuse of discretion is shown.

Nor is any abuse of discretion shown by the court's not fashioning a remedy less than dismissal in this case. Contrary to the People's reliance on *Conrad, supra,* 145 Cal.App.4th 1175, in which the length of the delay was about six weeks and the loss of relevant evidence was easily identifiable (*id.* at pp. 1182, 1185), as the court clearly explained, the loss of evidence favorable to the defense here could not fully be identified and assessed because so much time had passed. Although the People offered to stipulate to Madruga's earlier statements made to the detective who is now deceased, such is not the only

evidence missing due to the unjustifiable delay. Those statements alone do not provide the same evidence as having the detective who took them available to testify as to Madruga's demeanor when she made them or having his testimony about other aspects of his investigation of the crimes. Under the circumstances, the court properly determined it was difficult to assess the extent of the loss of such evidence with regard to Madruga's changing stories and Mirenda's ability to defend himself to satisfy due process.

In sum, the trial court properly dismissed the prosecution of Mirenda's case in its entirety pretrial.

## DISPOSITION

The judgment of dismissal is affirmed.

Nares, J., and Irion, J., concurred.