Filed 8/5/19

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF ALAMEDA

| | |
|---|---|
| DOMINIQUE DICKERSON,<br><br>    PETITIONER,<br><br>       v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUTY,<br><br>    RESPONDENT;<br><br>THE PEOPLE,<br><br>    REAL PARTY IN INTEREST. | APPELLATE DIVISION NO. 6111<br><br>(Super. Ct. No. 18-CR-005965)<br><br><br><br>OPINION |
| IVORY MARON BUGGS,<br><br>    PETITIONER,<br><br>       v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUTY,<br><br>    RESPONDENT;<br><br>THE PEOPLE,<br><br>    REAL PARTY IN INTEREST. | APPELLATE DIVISION NO. 6115<br><br>(Super. Ct. Nos. 18-CR-01321) |

1

Petitioners contend that delays in charging each of them resulted in a deprivation of due process rights under the California Constitution. In both cases, the trial court found that Petitioners suffered prejudice due to the prosecution's delays in charging them. The trial court then erred in failing to require competent evidence justifying the delay by the prosecution.

Evidence is at the core of our system of justice – even in the hurly-burly of a misdemeanor pretrial department. The failure to require at least some modicum of evidence to support the People's argument marred the trial court's analysis of Petitioners' claims. We therefore grant the Petitions for Writ of Mandate. We vacate the trial court's orders denying the motions to dismiss and remand both cases so that the trial court can properly consider both motions in their entirety.

**Facts**

*People v. Buggs*

In the early morning hours of October 26, 2017, California Highway Patrol officers arrested Ivory Maron Buggs for driving under the influence of alcohol and for driving on a suspended license. Officers observed Buggs driving a white Buick sedan at an estimated 70 miles per hour on 98th Avenue in Oakland, and watched him cross solid double yellow lines on his travels. After stopping Buggs, officers noted the strong smell of alcohol coming from inside the car. And Buggs could not provide his driver's license, registration, or insurance. Back at the jail, Buggs' breath-test results at 3:23 and 3:26 in the morning both indicated a blood alcohol content of 0.14 percent.

On August 9, 2018 – 287 days later – the Alameda County District Attorney's Office notified Buggs that it had filed a criminal complaint against him. The complaint alleged counts for driving under the influence of alcohol, driving with a 0.08 percent or higher blood alcohol level, and driving with a suspended license. (Veh. Code § 23152(a), (b), & 14601.1.)

Buggs filed a motion to dismiss based on pre-accusation delay. The trial court grappled with whether Buggs suffered any actual prejudice as a result of the delay. (*See Ibarra v. Municipal Court* (1984) 162 Cal. App. 3d 853, 857.) Buggs argued that his memory of the events of October 26, 2017 had faded. He could no longer recall whether he was speeding before he was detained. He also argued that he could no longer recall how the officers conducted field sobriety tests. The trial court explained that, given the driving under the influence count (section 23152(a)), "whether or not he's speeding may or may not come into play on that. I think there is a minimal showing here. It's weak, believe me, but *Ibarra* didn't require much else."

2

After hearing live testimony from Mr. Buggs concerning his memory, the trial court held:

> In viewing this in the context of *Ibarra v. Municipal Court*, I will acknowledge that even the initial proffer of what the actual prejudice might be is weak. I don't know that Mr. Buggs helped himself at all on the witness stand just now in terms of bolstering that showing of prejudice. He claims he has impaired memory, given the passage of time of the driving prior to the contact of the police officers, yet he remembers having two beers. He remembers his fiancée being with him in the right front passenger seat. And he remembers Sylvester Williams as not being there but coming later to come get the car. So he's got specific references, specific points that he does remember.
>
> But, again, going back to what *Ibarra* says, and in that particular case, the defendant was charged with a 647(a) [lewd acts in public]. He was arrested some 13 months later, claimed prejudice, and that he did remember the details of the conversations he had with law enforcement, that although the opinion is relatively light on facts, presumably led or tied him in some way to the 647(a). The trial judge in that particular court found no actual prejudice and was reversed by the appellate court, saying that even a showing like that in *Ibarra*, however minimal, was enough to shift the burden. So with that being the standard, I will find that Mr. Buggs has made, such as it is, a showing of actual prejudice sufficient to shift the burden.

The trial court then sought information from the People concerning the justification for the nearly ten-month delay. The deputy district attorney responded:

> I mean, that just goes to our office, this county, and how many cases go through our office. We looked this up during the lunch hour, and I believe last year, which I think is a good reflection of the previous year, we reviewed 41,000 cases that came through our office from the different police departments. Out of those 41,000, we charged 8,900 felonies, 21,000 misdemeanors, 4,000 felony [probation violations], and 8,300 misdemeanor [probation violations]. Our office obviously has 150 attorneys, but only 10 or 12 of them are reviewing cases at one time for charging. The number that we came up with is about 3,100 cases reviewed per year per DA in order for charging. That, obviously, doesn't take into account the police

3

departments themselves who obviously are coming in with several arrests and need to bring those cases over to us for charging, especially CHP, which was one of the bigger agencies in this county with all the DUI arrests that they have.

So our justification is that, unfortunately, it's the nature of the beast of Alameda County and our office and how many cases we have to review. Obviously, we reviewed it within the statute of limitations. And I think that's our number one goal. That was about a 10-month delay. But with the prejudice that's been shown and for those reasons, I believe the motion should be denied.

In response, the associate deputy public defender pointed out the lack of competent evidence relating to the People's justification. When the trial court asked if he had any reason to doubt the deputy district attorney's statistics, defense counsel observed, "I think that it is something that could be investigated. I'm not sure if [the deputy district attorney] was reading numbers off of something or if this is just his recollection, but, certainly, I think that just reciting some numbers, you should have some, you know, actual proof of those numbers."

The Court then ruled:

I can tell both sides right now, I will fully acknowledge that we have a situation where we have a very weak proffer of actual prejudice although sufficient to shift the burden. And we have a very weak justification for the delay. All right. What we also have is no evidence of any purposeful delay for any tactical advantage, and we have a filing that was done well within the statute of limitations.

So in this particular case, if I'm balancing, and I am, factors that I think are relevant and need to be bound in this case, and, quite frankly, I do find some of the instruction in *People v. Nelson* to be particularly helpful where it states: Purposeful delay in gaining advantage is totally unjustified, and a relatively weak showing of prejudice would suffice to tip the scales toward finding a due process violation. If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation.

And this is all in the context of what our U.S. Supreme Court wrote in *U.S. v. Lovasco*, where it said [the] Due Process Clause has a limited role in protecting against oppressive delay. The Due Process Clause does not permit courts to abort criminal prosecution simply

4

because they disagree with the DA's judgment as to when to seek an indictment, or in this case a complaint.

Again, this was filed within the statute of limitations we have. Given the weak nature of showing of the proffer of actual prejudice in this case, I cannot find [a] due process violation based upon the government's conduct. So that's the ruling. Motion's denied.

Petitioner's writ petition followed.

## People v. Dickerson

Shortly after 10:30 at night on March 23, 2017, a Fremont police officer arrested Dominque Dickerson for possessing a loaded firearm in a public place or vehicle. (Penal Code § 25805(a).) The police were investigating a 911 call from a homeowner concerned about an unknown male in her back yard. The police found three people in a 1998 Honda Accord a few feet away from the residence.

The officers detained Dickerson and the two other passengers. An officer asked Dickerson if he had any weapons on his person. Dickerson responded that he had a handgun in the glove compartment. The police searched the vehicle and found a loaded .380 Kahr semi-automatic pistol in the glove compartment. The unregistered gun held eight live rounds, with one in the chamber. Dickerson conceded that he was not a security guard and did not have a concealed carry weapons license.

On March 29, 2018 – 371 days later – the People filed a misdemeanor complaint charging Dickerson with carrying a loaded firearm in a vehicle in a city and carrying a concealed firearm in a vehicle, with a special allegation that Dickerson was not the registered owner of the firearm capable of being concealed. (Penal Code §§ 25850(a), (a)(1), 28550(c)(6).)

Dickerson filed a motion to dismiss based on pre-accusation delay. He argued that he had suffered prejudice because the homeowner and 911 caller's memory had faded. He also argued that a witness to the detention, who had been a passenger in the car, could not be found.

After hearing argument concerning the alleged prejudice to Dickerson, the trial court asked the deputy district attorney for information about the justification for the delay in filing a complaint. Counsel responded:

Let me just take a look here at one of the charging notes. A number of cases, at least in our office, require priority. Those are cases that

5

involve defendants in custody. Those are cases that involve felonies. And with over 10,000 misdemeanor cases, and I want to say at least 5,000 misdemeanor cases that were charged – I'm sorry. Felony cases that were charged. This case was on, I would say, on the verge of a felony case. Obviously, we didn't charge it as that. But it did have the possibility of that. I would say that given that many cases, and we only have maybe a third of our office able to charge that many cases, we can't get to these right away. Now, had this been closer to the felony statute of limitations of three years, I believe that a claim might be more effective, but we certainly did it within still under the 16-month period that a minimum would require on a felony in this case.

In response, the associate deputy public defender noted:

In our county the District Attorney's Office has, I believe, over a hundred attorneys handling cases. And, in addition, [the deputy district attorney] provides 5,000, 10,000. He's providing numbers, but that's not clear that they had that many cases at the time of the incident in 2017. He's simply making a generalization that's not been supported with any documentation or clarification as to what time frame he's speaking about. If he's giving current statistics, that's not sufficient because we're talking about a moment in 2017. So there's no justification for a delay.

The trial court found a "minimum" of actual prejudice to Dickerson based on the delay. The court explained:

The court has evaluated the actual prejudice that has been delineated by the defense in this particular case. I'll find that while it is – it can be characterized as rather de minimis, I do believe that at minimum, it does provide a minimal prima facie case of actual prejudice, specifically having to do with the loss of memory from [the homeowner and 911-caller] as it might pertain to her being an important witness to a potential 1538.5 motion. That's my main focus. Mr. Faulkner's potential testimony is also on its face speculative. But my reading of *Fowler* doesn't indicate that you would need much more than that as long as it's a plausible explanation. So there is some showing of actual prejudice in this case. And I say that it's rather de minimis because that count turns into the balancing test that has to come after the court considers the justification offered by the people.

6

The trial court then turned to the question of justification. The court reasoned:

> [The] People's explanation in terms of the justification for the 14- to 15-month delay seems to me to be mainly having to do with the number of misdemeanors that are potentially charged or considered here in Alameda County along with some staffing-related issues. Obviously, not the most powerful law enforcement justification for delaying a filing decision for that period of time. However, I would note it's still well within [the] statute of limitations, so I'm taking that in consideration as well. Given the balance of all factors in this case, most particularly, de minimis prejudice has been shown by the defense in this case, I find that the justification does outweigh any potential and actual prejudice, and I'll deny the motion at this point in time.

And, as in *Buggs*, Petitioner's writ petition followed.

## Analysis

A writ of mandate is an appropriate means to review the denial of the motions to dismiss here. There is ample precedent for use of a writ to review the denial of a motion to dismiss based on a violation of speedy trial rights. (*Serna v. Superior Court* (1985) 40 Cal. 3d 239, 264 [reviewing felony speedy trial rights by writ]; *Dews v. Appellate Division of the Superior Court (San Francisco)* (2014) 223 Cal. App. 4th 660, 664 [reviewing speedy trial rights in misdemeanor case by writ].) Speedy trial rights are not at issue here – "[t]he due process right is distinct from a speedy prosecution complaint." (*Ibarra*, 162 Cal. App. 3d at 857.) The legal frameworks for analyzing both sets of rights, however, are substantially similar. Given the nature of the due process error, and the fact that it arose in more than one case, we find it appropriate to address the due process issues concerning pre-accusation delay by writ.

The California Constitution protects criminal defendants from "unreasonable delay between the time an offense is committed and an accusatory pleading is filed." (*People v. Morris* (1988) 46 Cal. 3d 1, 37, disapproved on other grounds, *In re Sassounian* (1995) 9 Cal. 4th 535, 543-44 n.5; Cal. Const. Art. I, § 15.) So do the Fifth and Fourteenth Amendments to the United States Constitution. "In the due process context, the issue is whether the defendant's right to a fair trial has been impaired or prejudiced because of unreasonable delay." (*Ibarra*, 162 Cal. App. 3d at 857 [citing *Scherling v. Superior Court* (1978) 22 Cal. 3d 493, 507].)

"In evaluating a claim of pre-complaint delay, 'any prejudice to the defendant resulting from the delay must be weighed against justification for the delay.' (*Scherling*, 22 Cal. 3d at 505.) 'In the balancing process, the defendant has the *initial* burden of showing some prejudice before the prosecution is required to offer any reasons for the delay [citations]. The sowing of prejudice requires some evidence and cannot be presumed [Citations.]" (*Morris*, 46 Cal. 3d at 37 [citing *Garcia v. Superior Court* (1984) 163 Cal. App. 3d 148, 151; *United States v. Lovasco* (1977) 431 U.S. 783, 790; additional citations omitted].)

Prejudice may exist as a result of many different factors, including fading memory or loss of material evidence attributable to the delay. (*Morris*, 46 Cal. 3d at 37; *People v. Dunn-Gonzalez* (1996) 47 Cal. App. 4th 899, 911; *Ibarra*, 162 Cal. App. 3d at 858; *Serna*, 40 Cal. 3d at 251.) "The overarching theme is that the loss of such evidence, especially when the defendant or victims cannot independently recall details of the crime, makes it difficult or impossible for the defendant to prepare a defense thus showing prejudice." (*People v. Mirenda* (2009) 174 Cal. App. 4th 1313, 1328.)

Of course, a defendant's showing of prejudice must be supported by facts and not just bare conclusions. (*Crockett v. Superior Court* (1975) 14 Cal. 3d 433, 442; *Ibarra*, 162 Cal. App. 853 at 858.) What is more, the defendant must show actual prejudice. (*People v. Cordova* (2015) 62 Cal. 4th 104, 120; *People v. Abel* (2012) 53 Cal. 4th 891, 909.) "The ultimate inquiry in determining a claim based upon due process is whether the defendant will be denied a fair trial." (*Scherling v. Superior Court* (1978) 22 Cal. 3d 493, 507.)

The trial court and counsel's focus on the minimal showing of prejudice found in *Ibarra* during the hearing on Petitioner Buggs' motion to dismiss seems to overlook more recent developments in the law concerning the requirement that the defendant present evidence of actual prejudice. For example, in *People v. Cordova*, the California Supreme Court found the defendant had made no showing of "substantial prejudice" based on a claim that "some persons who assertedly could have supplied exonerating evidence had died." (62 Cal. 4th at 120.) The Court explained, "the claimed prejudice is speculative. No reason exists to believe any of these witnesses would have supplied exonerating, rather than incriminating, evidence, or any evidence at all." (*Id.*) And in *People v. Abel*, the California Supreme Court found the defendant failed to "meet his initial burden of showing prejudice resulting from the precharging delay" notwithstanding multiple assertions of fading memory. (53 Cal. 4th at 909-911.) These newer precedents involve murders and not misdemeanors. That said, there is no indication that our state constitutional standards for assessing due process violations for pre-accusation delay is different.

Once the defendant makes a showing of prejudice, "the burden then shifts to the prosecution to justify the delay." (*Dunn-Gonzalez*, 47 Cal. App. 4th at 911.) The court then "balances the harm against the justification." (*Id.*) The more reasonable the delay, the more serious the prejudice must be in order to state a constitutional violation that requires dismissal. (*Ibarra*, 162 Cal. App. 3d at 858; *People v. Boysen* (2007) 165 Cal. App. 4th 761, 777.)

The District Attorney's Office "has broad discretion when it comes to deciding how to allocate scarce investigative resources and when to file criminal charges in a particular case." (*People v. Booth* (2016) 3 Cal. App. 5th 1284, 1309.) Of course, the District Attorney may take a reasonable amount of time to investigate, determine whether to prosecute, and gather evidence. (*Dunn-Gonzalez*, 47 Cal. App. 4th at 911.) Investigative delay is typically the strongest justification for the passage of time between an arrest and the filing of charges. (*People v. Nelson* (2008) 43 Cal. 4th 1242, 1256.)

At its core, the important discretion and trust our system vests in the prosecution is why the test for assessing due process violations based on pre-accusation delay relies on a balancing test rather than on line-drawing based on statutes of limitations. (*See Ibarra*, 162 Cal. App. 3d at 858 ["Even a minimal showing of prejudice may require dismissal if the proffered justification for delay be unsubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal. Therein lies the delicate task of *balancing* competing interests."].)

Here, the trial court had a firm grasp of the law concerning how to evaluate a claim of pre-accusation delay. The court cited and discussed relevant precedent in deciding both motions to dismiss. While reasonable minds could disagree with the conclusions concerning prejudice in the evaluation of both matters, the trial court had evidence that it used to make findings of fact. In Buggs, the trial court heard testimony from Buggs himself. In Dickerson, the trial court relied on fact declarations submitted in support of Dickerson's contentions of prejudice.

Under California law, the trial court's findings of prejudice shifted the burden to the People to provide a justification for the delay in filing the complaints. Even one witness would have been enough. (*See Dunn-Gonzalez*, 47 Cal. App. 4th at 916 ["The lower court's finding was primarily based upon the testimony of [an assistant district attorney]. The direct evidence of one witness entitled to full credit is sufficient for proof of any fact except where additional evidence is required by statute. (Evid. Code § 411.)"].) And the courts recognize that "the difficulty in allocating scarce prosecutorial resources is a strong justification for precharging delay." (*Booth*, 3 Cal. App. 5th at 1309 [citing *Nelson*, 43 Cal. 4th at 1256-57].)

But here, the trial court relied solely on attorney argument in finding an adequate justification. There was absolutely no evidence submitted to the trial court to support the prosecution's contention. No declaration. No testimony. Simply the prosecutor in each case citing numbers that might reflect that the charging deputy district attorneys are, at times, overwhelmed by the workload. Further, the prosecutors gave no explanation about why *these two cases* were delayed many months.

In Dickerson, the trial court further erred by focusing on the absence of evidence of a purposeful delay in prosecution. In a sense, doing so effectively shifted the burden back to Petitioner to rebut the prosecution's justification for the delay when the prosecution had not yet provided any actual evidence to support its position. Without any evidence, the analysis of the lack of purposeful delay put the proverbial cart before the horse. With evidence, assessing whether a delay was purposeful would be appropriate. Under California law, "Purposeful delay to gain an advantage is totally unjustified, and a relatively weak showing of prejudice would suffice to tip the scales towards finding a due process violation. If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation." (*Nelson*, 43 Cal. 4th at 1256.)

Evidence is at the core of our system of justice. It differentiates decision-making in court from decisions made in virtually any other forum. As we instruct our jurors:

> The evidence that is presented in court can be tested; it can be shown
> to be right or wrong by either side; it can be questioned; and it can
> be contradicted by other evidence.

(CACI No. 116 ["Why Electronic Communications and Research Are Prohibited"].)

We recognize that flexibility in case management can be a necessity. A busy criminal pretrial department can be a challenge for prosecutor, defense counsel, the trial court, and court staff alike. But, "[a]lthough we are sympathetic to the need of trial courts to process the heavy case load," the rules of evidence and procedure apply across all the substantive divisions of our courts. (*See Elkins v. Superior Court* (2007) 4 Cal. 4th 1337, 1345, 1352-53 [holding local family law procedures for abbreviated proceedings based on declarations inconsistent with statute, rules of procedure, and rules of evidence].)

The problem with relying only on the arguments of counsel, without supporting evidence, is even more evident when comparing the statements made to

10

the trial court in Buggs and Dickerson. The prosecutor in Buggs referenced 10 or 12 district attorneys (out of a total of 150) reviewing cases to decide whether to prosecute. The prosecutor in Dickerson referred to "a third" of the office being involved in charging. The prosecutor in Buggs cited 8,900 felonies charged; the prosecutor in Dickerson 5,000. The prosecutor in Buggs said the office charged 21,000 misdemeanor cases; Dickerson "over 10,000." While the statistics cited by counsel in Buggs more closely track the statistics submitted by the District Attorney's Office to the response to Petitioner's writs, those statistics were not placed in the record as competent evidence in the trial court and are not properly before this one.

**Conclusion**

We recognize that both the District Attorney and the Public Defender are faced with substantial limitations on their respective resources. Delay is introduced into our system of justice by prosecution and defense alike, as well as by the court's own resource constraints. For example, we are mindful of the fact that proceedings in the Buggs case were continued multiple times, including at the Petitioner's request, prior to the hearing on the motion to dismiss. But, when evaluating whether a delay in prosecution is justified in the face of a finding of prejudice by the trial court, we hold that substantial, competent evidence must support the alleged justification.

11

## <u>Disposition</u>

We grant the Petitions and issue Writs of Mandate. We vacate the trial court's orders denying the motions to dismiss. The trial court is directed to consider the motions to dismiss anew. If the trial court finds that substantial, competent evidence supports the claim of prejudice, then substantial, competent evidence must be presented to support the alleged justification for the delay in charging the offenses. The trial court must then balance those factors to reach a decision on the motions.

**CERTIFIED FOR PUBLICATION**

_____
MARKMAN, P.J.

We concur:

_____
CRAMER, J.

_____
GRILLO, J.

12

PARTIES AND ATTORNEYS

| People of the State of California, *Real Party in Interest* | Christopher Chin, Deputy District Attorney<br>John Mifsud, Deputy District Attorney<br>James Logan, Deputy District Attorney |
| --- | --- |
| Dominique Dickerson, *Petitioner* | Omid Khalilnaj i, Assistant Public Defender<br>Michelle Queirolo, Assistant Public Defender<br>David Carlisle, Assistant Public Defender<br>Palden Ukyab, Assistant Public Defender |

Trial Court Judge:        Hon. Keith Fudenna
Hon. Richard Keller
Hon. Amy Sekany
Hon; Dan Grimmer
Hon. Jason Chin
Hon. Jenna M. Whitman
Hon. Clifford Blakely

Trial Court Case Numbers:   People v. Dickerson, Dominique Nathaniel
[Superior Ct. No. 18-CR-005965 ǀ Appellate No. 6111]

PARTIES AND ATTORNEYS

| People of the State of California, *Real Party in Interest* | Christopher Chin, Deputy District Attorney<br>John Mifsud, Deputy District Attorney<br>Briggitte Lowe, Deputy District Attorney<br>Jessica Serrato, Deputy District Attorney<br>Luis Marin, Deputy District Attorney |
|---|---|
| Ivory Maron Buggs, *Petitioner* | Palden Ukyab, Assistant Public Defender<br>Sung Kim, Assistant Public Defender<br>Paul Michael Foster, Assistant Public Defender |

Trial Court Judge:        Hon. Amy Sekany
                            Hon. Jason Chin
                            Hon. Victoria Kolakowski
                            Hon. Clifford Blakely

Trial Court Case Numbers:   People v. Buggs, Ivory Maron
                                    [Superior Ct. No. 18-CR-013215 ǀ Appellate No. 6115]