[No. C047936. Third Dist. Dec. 19, 2006.]

THE PEOPLE, Plaintiff and Appellant, v.
WARREN JOE CONRAD, SR., Defendant and Respondent.

**COUNSEL**

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Appellant.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**NICHOLSON, J.**—Prosecutorial delay, during which a witness favorable to the defense dies, may violate state due process and speedy trial guarantees. If, however, the lost testimony may nonetheless be presented to the jury by other means, such as an instruction to the jury, the prejudice can be substantially mitigated, thus affording due process and a fair trial.

Here, the trial court, rather than fashioning a less severe remedy, dismissed the case because a witness died during the prosecution's delay. We reverse

because the trial court should have fashioned a less severe solution to protect defendant's due process and fair trial rights.

## FACTUAL AND PROCEDURAL BACKGROUND

The following evidence is taken from the transcripts of defendant's parole revocation and preliminary hearings and other documentary evidence presented in connection with defendant's motion to dismiss.

Defendant was convicted of rape in 1966 and of committing a lewd act with a child in 1966 and 1973, and, as a result, was required to register as a sex offender. (Pen. Code, § 290; hereafter, unspecified statutory references are to the Penal Code.)

Following his release from Atascadero State Hospital in November 2003, where he was held for prior crimes, defendant resided at the Traveler's Lodge in Dunsmuir. He did not like it there and asked his parole officer, Stephen Bakes, for permission to move in with his daughter Eloise Conrad, who resided in an apartment complex in Yreka. Bakes denied the request because many children resided at the apartment complex. Thereafter, defendant sought permission to move in with his ex-wife, Bonnie Super, who resided in Yreka. Bakes granted the request, and defendant moved in with Super and registered at that address pursuant to section 290.

On January 13, 2004, Bakes attempted to contact defendant at Super's home. He knocked on the door but nobody answered. The following day, Super left a message on Bakes's answering machine, stating defendant had moved out on January 10, 2004, and had moved in with his daughter, Eloise, at the Pine Garden Apartments. Super later explained that she thought defendant had moved out, but was not certain of it. She explained that she still had all defendant's clothes, which she had boxed and placed in the garage.

After receiving Super's message on January 14, 2004, Bakes immediately telephoned Eloise's apartment and left a message asking someone to call him back. Eloise called Bakes the following day. When Bakes advised her that defendant was prohibited from living at the Pine Garden Apartments, she became angry and hung up. Defendant called Bakes later that same day and left a message asking Bakes to call him. He left Eloise's number as the callback number.

Defendant was arrested at Eloise's apartment on January 23, 2004, for violating the conditions of his parole by failing to register as a sex offender, and was booked into the Siskiyou County Jail. When he was arrested,

defendant had his medication with him. Bakes, however, did not know whether defendant had any clothing with him.

At some point, Bakes contacted defendant's brother Willis Conrad who told Bakes defendant "had . . . been down river for a few days" staying with him sometime after leaving Super's on January 10, 2004, and prior to his arrest on January 23, 2004. Defendant did not spend the night at Super's again after leaving on January 10, 2004.

A deputy district attorney advised the arresting officer that, rather than prosecute for the failure to register, the district attorney would simply rely on the decision by the Board of Prison Terms with respect to parole revocation. Nevertheless, a felony complaint was filed on March 9, 2004, nearly six weeks after defendant's arrest, charging defendant with (1) failing to register as a sex offender within five working days of changing his residence (§ 290, subd. (a)(1)(A)),[1] (2) failing to register as a sex offender within five working days of establishing a second residence (§ 290, subd. (a)(1)(B)),[2] and (3) failing to inform the law enforcement agency with which he last registered of his new residence address within five working days (§ 290, subd. (f)(1)).[3] It was also alleged defendant suffered three prior convictions within the "Three Strikes" law (§§ 667, subd. (e), 1170.12, subd. (c)) and served one prior prison term (§ 667.5).

The People's primary theory of guilt was that defendant moved out of Super's home on January 10, 2004, and took up residence with his daughter, Eloise. Alternatively, the People asserted defendant established a second residence on January 10, 2004, when he began living with Eloise. Defendant disputed both theories, contending "he never moved from [Super's home] and

---

[1] At the time of the alleged offense, section 290, subdivision (a)(1)(A) provided: "Every person described in paragraph (2), for the rest of his or her life while residing in, or, if he or she has no residence, while located within California . . . , shall be required to register with [law enforcement] within five working days of coming into, or changing his or her residence or location within, any city, county, or city and county, or campus in which he or she temporarily resides, or, if he or she has no residence, is located." (Stats. 2003, ch. 634, § 1.3.)

[2] At the time of the alleged offense, section 290, subdivision (a)(1)(B) provided: "If the person who is registering has more than one residence address or location at which he or she regularly resides or is located, he or she shall register in accordance with subparagraph (A) in each of the jurisdictions in which he or she regularly resides or is located. If all of the addresses or locations are within the same jurisdiction, the person shall provide the registering authority with all of the addresses or locations where he or she regularly resides or is located." (Stats. 2003, ch. 634, § 1.3.)

[3] At the time of the alleged offense, section 290, subdivision (f)(1) provided: "If any person who is required to register pursuant to this section changes his or her residence address or location, . . . the person shall inform, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location. . . ." (Stats. 2003, ch. 634, § 1.3.)

simply had an argument with [her] and was staying with different family members until they 'patched' things up."

Defendant's parole revocation hearing was held on May 25, 2004. The hearing officer found "good cause on change of residence, not necessarily that he moved in with Eloise, but certainly he moved out from [Super's] based on [Super's] testimony for thirteen days, he didn't sleep there." Defendant was ordered returned to custody for nine months.

Defendant's brother Willis died on June 27, 2004. Defendant was arraigned on the complaint on June 28, 2004. A preliminary hearing was held on July 13, 2004, and defendant was held to answer the charges. An information was filed that same day. Defendant was arraigned on the information on July 27, 2004, and the matter was set for trial on September 28, 2004.

Defendant filed his motion to dismiss the information on August 16, 2004, arguing the prosecution's delay in filing the complaint and thereafter arraigning him on it resulted in the unavailability of a key witness without whom he could not receive a fair trial. According to defendant: "The evidence shows that none of the prosecution witnesses saw [defendant] between January 10 and January 23, 2004[,] except Bonnie Super who stated she saw him once at [her home]. However, we know from [the parole officer's] testimony that [defendant] had spent 'a few days' at his brother [Willis's] house during this period. [¶] Therefore, [Willis] becomes [a] key and pivotal witness for the defense. Without [Willis, defendant's] ability to establish his defense, that he never moved out of Bonnie Super's house and that he was visiting relatives during this period, has been substantially and irrevocably damaged."

Defendant explained that (1), had he been arrested in a timely manner, his "speedy trial" would have occurred prior to Willis's death and (2), "had [he] known of the felony complaint filed March 9, 2004," or been arraigned in May 2004 "while he was back in the Siskiyou County Jail for his [parole violation hearing]," Willis's testimony could have been preserved.

The People responded that defendant's assertion that Willis "would have provided exculpatory evidence" is "nothing more than speculative 'gobbledegook [*sic*].' " The People noted defendant's failure to provide an offer of proof as to what evidence Willis would have provided were he available. The People also argued that spending a few nights "down river" with his brother during the operative time period "would not negate the evidence provided by [defendant] himself that he spent nights at Eloise's residence, nor from [Super's] that [he] left on January 10, 2004 and did not spend another night

at her residence from that date." Finally, the People argued the alleged significance of Willis's testimony is belied by defendant's failure to call Willis as a witness at his parole revocation hearing, where he faced "up to one year of additional custody time."

No evidentiary hearing was held; the parties agreed to submit the matter on the papers.

In granting defendant's motion, the trial court stated: "Whether or not the delay occasioned in this case is defined as pre-accusation delay (date of arrest 1-23-04 to date of filing of the complaint 3-9-04) or post-accusation delay (date of filing of complaint 3-9-04 to date of arraignment of the complaint 6-28-04) does not appear to be dispositive. [¶] At a minimum, it is clear that delay did occur from 3-9-04 to 6-28-04. As a consequence of the delay, Defendant's brother was lost as a witness due to his death on 6-27-04. The Court is satisfied that Willis Conrad could have offered relevant and material evidence on the issue of Defendant's guilt, whether at a preliminary hearing or at trial. What impact that evidence would have is not for this Court to decide, it is simply something the Defendant was entitled to have the jury consider. The Court is satisfied that the Defendant was prejudiced by the delay. [¶] The People have offered no explanation or justification for the delay and resulting prejudice. [¶] The court is satisfied that the Defendant was denied his right to due process under the Fifth and Fourteen Amendments to the United States Constitution and Article [I] section [7] of the California Constitution."

## DISCUSSION

■ Defendant's motion to dismiss was based on violations of his speedy trial and due process rights under the federal and state Constitutions. The Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution guarantee the accused the right to a speedy trial, in part to protect the defendant from the hazard of a trial after so great a lapse of time that the means of proving his innocence may not be within his reach, as, for instance, by the loss of witnesses or the dulling of memory. (*People v. Martinez* (2000) 22 Cal.4th 750, 767–768 [94 Cal.Rptr.2d 381, 996 P.2d 32].)

As summarized in *Martinez*: "[T]here are two important differences in the operation of the state and federal constitutional rights as construed by our courts. [¶] The first difference concerns the point at which the speedy trial right attaches. Under the *state* Constitution, the filing of a felony complaint is sufficient to trigger the protection of the speedy trial right. [Citations.] Under

the *federal* Constitution, however, the filing of a felony complaint is by itself insufficient to trigger speedy trial protection. [Citation.] The United States Supreme Court has defined the point at which the federal speedy trial right begins to operate: '[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.' (*United States v. Marion* (1971) 404 U.S. 307, 320 [30 L.Ed.2d 468, 92 S.Ct. 455].)

■ "The second difference is in the showing that a defendant must make to obtain a dismissal for violation of the speedy trial right. For the *federal* Constitution's speedy trial right, the United States Supreme Court has articulated a balancing test that requires consideration of the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defense caused by the delay. [Citation.] Because delay that is 'uncommonly long' triggers a presumption of prejudice [citation], a defendant can establish a speedy trial claim under the Sixth Amendment without making an affirmative demonstration that the government's want of diligence prejudiced the defendant's ability to defend against the charge. [Citation.] Under the *state* Constitution's speedy trial right, however, no presumption of prejudice arises from delay after the filing of a complaint and before arrest or formal accusation by indictment or information [citation]; rather, in this situation a defendant seeking dismissal must affirmatively demonstrate prejudice [citation]." (*People v. Martinez, supra,* 22 Cal.4th at pp. 754–755, original italics.)

■ While the speedy trial right protects against "postaccusation" delay, the due process right found in the Fourteenth Amendment to the United States Constitution and article I, section 15 of the California Constitution protects against "preaccusation" delay—that is, delay between the time an offense is committed and an accusatory pleading is filed. (*People v. Morris* (1988) 46 Cal.3d 1, 37 [249 Cal.Rptr. 119, 756 P.2d 843], disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543–544, fn. 5 [37 Cal.Rptr.2d 446, 887 P.2d 527]; *Scherling v. Superior Court* (1978) 22 Cal.3d 493, 504–507 [149 Cal.Rptr. 597, 585 P.2d 219].) "A [due process] claim based upon the federal Constitution also requires a showing that the delay was undertaken to gain a tactical advantage over the defendant." (*People v. Catlin* (2001) 26 Cal.4th 81, 107 [109 Cal.Rptr.2d 31, 26 P.3d 357].)

Here, the only prejudice asserted by defendant—the loss of Willis's testimony—occurred *before* the filing of the information. Because defendant's federal speedy trial right had not yet attached, we need not engage in any

further analysis regarding defendant's federal speedy trial claim. Moreover, defendant has made no showing that the preaccusation delay was undertaken to gain a tactical advantage over him, and thus, his federal due process claim fails as well. Accordingly, only defendant's due process and speedy trial claims based on the state Constitution remain.

■ " '[R]egardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay.' [Citation.]" (*People v. Martinez, supra,* 22 Cal.4th at p. 767.) The prejudice we must consider is the harm to defendant's ability to defend himself. (See *Barker v. Wingo* (1972) 407 U.S. 514, 532 [33 L.Ed.2d 101, 118, 92 S.Ct. 2182]; see also *Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, 946 [223 Cal.Rptr. 907].) We review the trial court's determination that defendant was prejudiced by the delay for substantial evidence. (*People v. Martinez, supra,* 22 Cal.4th at p. 758.)

On appeal, the People renew their arguments that "no prejudice was possible because [Willis] could not have negated any of the [People's] theories of guilt." According to the People, defendant "could have visited [Willis] from any residence he had, but there is no evidence in the record to show that Willis, 120 miles away in a remote area of the county [citation], could offer any admissible evidence tending to show where [defendant's] residence actually was."

Defendant responds that Willis "could have testified that it was not uncommon for [defendant] to come and spend a few days with him and then go home. [He] could have testified that [defendant] was at [his home] during the time in question, how long [defendant] stayed with him this time and that [defendant] had no belongings with him. [He] could also have stated what [defendant] told [him], either through a hearsay exception or to show [defendant's] state of mind. [He] could say [defendant] planned to return to his registered residence."

While defendant speculates concerning the substance of Willis's testimony, had it been preserved, he has tendered no offer of proof as to that testimony. The only exception in the record is Bakes's statement that Willis told him defendant spent a few days "down river" with him between January 10 and 23, 2004. We reject defendant's speculation and consider only the facts for which there was at least an offer of proof. (See *Shleffar v. Superior Court, supra,* 178 Cal.App.3d at pp. 945–946 [speculation insufficient to support claim of evidence loss].)

We therefore turn our attention to the lone evidence defendant properly contends was lost: Bakes's statement that Willis told him defendant spent a

few days with him "down river" between January 10 and 23, 2004. The statement is hearsay; it would be offered for the truth of the matter asserted— that defendant stayed with Willis for a few days during the period after he left Super's residence and before his arrest on the parole violation.

The defense theory was that defendant had not moved out of Super's on January 10, 2004, but rather the two had argued and he had gone to stay with relatives until he and Super could "patch things up." While certainly not conclusive, evidence that defendant stayed with Willis (in addition to Eloise) after leaving Super's arguably supports his defense that he was staying with relatives (as opposed to relocating), and thus we cannot say defendant was not prejudiced by its loss. (See *Barker v. Wingo, supra*, 407 U.S. at p. 532; *Shleffar v. Superior Court, supra*, 178 Cal.App.3d at p. 946.)

While the prejudice to defendant may be slight, it must be weighed against the justification, if any, for the delay. (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 915 [55 Cal.Rptr.2d 404].) As the court explained in *Dunn-Gonzalez*: "Even a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal. Therein lies the delicate task of balancing competing interests." (*Ibid.*) Here, the trial court found "[t]he People . . . offered no explanation or justification for the delay," and the People do not challenge that finding on appeal.

A trial court has discretion to fashion a remedy when the prosecutor's conduct has resulted in a loss of evidence favorable to the defense. (*People v. Price* (1985) 165 Cal.App.3d 536, 545 [211 Cal.Rptr. 642]; see also *People v. Zamora* (1980) 28 Cal.3d 88, 99 [167 Cal.Rptr. 573, 615 P.2d 1361] [relating to destruction of discoverable evidence].) When, as here, the delay in prosecution resulted in the loss to the defense of identifiable evidence, the prejudice to the defendant may be substantially mitigated, even virtually eliminated, by presenting the evidence to the jury through alternate means.

Concerning a remedy for the similar scenario of the government's destruction of evidence, the Supreme Court reviewed cases in which the courts (1) held inadmissible the results of a breath-alcohol test because the police failed to preserve the breath ampoule, (2) refused to admit a breath-alcohol test favorable to the prosecution because the police refused to allow the defendant to take a blood-alcohol test, and (3) reversed a conviction and remanded for a new trial in which evidence previously concealed by the prosecution would be revealed to the jury. (*People v. Zamora, supra*, 28 Cal.3d at pp. 99–100, fn. 7.) The court concluded that the severity of the remedy depends on the materiality of the evidence lost to the defense. For example,

government conduct that deprives a defendant of evidence that might conclusively demonstrate innocence could require dismissal, while conduct that deprives a defendant of evidence that is immaterial to the charge would not require a remedy at all. (*Id.* at p. 100.)

■ This case concerns the analogous situation in which evidence is lost to the defense through prosecutorial delay rather than the government's destruction of the evidence. The evidence that defendant may have been with his brother for a few days does not conclusively demonstrate innocence, even though it is material to the charges. Even if the jury believes defendant spent a few days with his brother, it could still find defendant guilty of one or more of the charged crimes if, for example, it concludes defendant moved away from Super's residence or that he established a second residence. Therefore, an intermediate remedy, between dismissal and no remedy, is appropriate.

In *People v. Zamora, supra,* 28 Cal.3d at pages 102 and 103, the court fashioned a remedy, short of dismissal, that addressed specifically the evidence lost to the defendant: "[U]pon remand of this case, the court should instruct the jury that [the officers] used excessive or unnecessary force on each occasion when complaints were filed against those officers, but that the complaint records later were destroyed. The court should also instruct the jury that they may rely upon that information to infer that the officers were prone to use excessive or unnecessary force [citation] and that the officers' testimony regarding incidents of alleged police force may be biased. [Citation.]" (Fn. omitted.)

Here, following the lead of *Zamora*, we conclude the appropriate remedy is for the trial court to instruct the jury that defendant stayed with his brother for a few days between January 10, 2004, and January 23, 2004. The instruction should also inform the jury that defendant's brother was unavailable to testify concerning that fact because he died during the time the prosecution unjustifiably delayed in filing a complaint against defendant.

This is not a perfect solution to the problem of lost evidence; however, it adequately addresses the loss of relevant evidence in a manner that affords defendant due process and a fair trial while allowing the prosecution to go forward. (See *People v. Zamora, supra,* 28 Cal.3d at p. 103.) Because prejudice could have been substantially mitigated in this way, thereby affording defendant due process and a fair trial, dismissal of the action was an abuse of discretion. (*People v. Price, supra,* 165 Cal.App.3d at p. 545.)

## DISPOSITION

The judgment is reversed and the action remanded for further proceedings consistent with this opinion.

Sims, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied January 18, 2007, and respondent's petition for review by the Supreme Court was denied April 11, 2007, S149734. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.