Filed 4/30/13  P. v. Jackson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TOMMIE LEE JACKSON,<br><br>        Defendant and Appellant. | A133779<br><br>(Contra Costa County<br>Super. Ct. No. 051105261) |

Defendant Tommie Lee Jackson appeals from his conviction, by jury, of six counts of lewd conduct toward a child in violation of Penal Code section 288, subdivision (c)(1).  His sole contention on appeal is that the trial court erroneously denied his request to recall the victim to the stand, during his case in chief, for a fourth session of cross examination.  Defendant had ample opportunity to question the victim, and we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 13, 2011, the Contra Costa District Attorney filed a six-count information accusing defendant of six violations of Penal Code section 288, subdivision (c)(1).[1]  This code section provides that "lewd or lascivious" actions against "a child of 14 or 15 years" by one who "is at least 10 years older than the child" is punishable by "imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year."  (§ 288, subds. (a), (c)(1).)  The information also

---

[1] All further statutory references are to the Penal Code unless indicated.

1

asserted defendant had two prior serious felony convictions and other felony convictions that made him eligible for "three strikes" punishment and other sentence enhancements.

The victim, Jane Doe, testified at trial as a prosecution witness. Her direct testimony began on September 22, 2011, and was as follows: In 2009, when she was age 15, she and defendant, then age 42, had what appeared to be a consensual dating relationship. They would often sleep together and have sex "maybe a couple times a week." Doe testified she still cared for defendant and it was hard for her to testify.

Defendant, who represented himself throughout the trial proceedings, began his cross-examination of Doe on the afternoon of September 22, 2011. At 4:30 p.m., defendant informed the court he still had "quite a few questions" left, so the court declared a recess and ordered Doe back at 9:00 a.m. Monday morning, September 26, 2011.

Doe did not appear on the 26th. According to the district attorney's investigator, who had gone to pick up Doe but could only contact her by phone, Doe said she was overwhelmed and could not take it. A warrant issued for Doe's arrest. Doe was brought to court pursuant to the warrant the following day, September 27, 2011, and cross-examination continued. The district attorney conducted a re-direct examination, and defendant followed with a re-cross-examination that continued after the lunch break. On concluding, defendant requested Doe be subject to recall. In all, defendant's questioning of Doe spanned three sessions and approximately 44 reporter's transcript pages.

Toward the end of the day, defendant began presenting his case-in-chief. After the jury was excused for the evening, he informed the trial court he wanted to recall Doe. When asked why, he told the court he wanted to question Doe further about her demeanor. The trial court asked defendant if Doe had not already testified about her demeanor, and defendant responded there were other questions he had:

> "MR. JACKSON: That was one question. There was a couple of more other questions I want to ask

2

"THE COURT: All right. What were those?

"MR. JACKSON: Oh, what were those?

"THE COURT: Yes.

"MR. JACKSON: It was about has she been coerced in changing her testimony. Have anybody—

"THE COURT: She didn't change her testimony.

"MR. JACKSON: She changed it twice. She had one statement last week, and then she had another statement this week. It was two different statements. That's why I was impeaching her on her statement. And if anybody—

"THE COURT: Let's stop there. What's the difference in her testimony from last week to this week?

"MR. JACKSON: Well, couple of questions I didn't ask, has she been coerced to change her testimony, did anybody threaten her to change her testimony, or coerce her into saying things she didn't want to say, or if anyone paid her—

"THE COURT: Why didn't you ask her that today?

"MR. JACKSON: Because I was adding everything up. That's why I asked to recall her to see some things. And when I saw her demeanor and telling her thanks a lot for nothing, or something like that, I wanted to ask. And that's when it came to me after I was adding things up. That's why I want to address that.

"THE COURT: I still don't know why you didn't ask her that when you had her here. It's a big deal to get her here.

"MR. JACKSON: Because, at that time, when I saw that, that's when it rung to me, and I was looking at her, and I'm wondering where she got money from to get her hair done and nails. Things like that. If anybody offered her gifts to change her testimony, which I'm entitled to do when discovering what California Supreme Court states, and that's what I was going to ask her about. I was seeing some things.

"THE COURT: But you saw her today. You knew she was upset for having to come back, and I have not heard a reason yet why you didn't ask her those things already. You can't just keep bringing a witness back and back and back, as you think of more things that you want to say. . . .

"[¶] . . . [¶]

"MR. JACKSON: She was walking off the stand. And when I heard that statement and saw the demeanor, that's when I said, well, I should ask her these questions. Then I seen her nails and stuff. I couldn't see them back there or anything. When she waved, that's when I said, well, I got to ask her these questions, where she got the money from, did anybody offer her gifts to change her testimony or anything. And California Supreme Court states I have a right to ask that."

The prosecuting attorney argued defendant had a full chance to question Doe and had offered no credible reason why he could not have asked his questions about coercion

or bribery during his several cross-examinations. She also argued defendant's request was, under Marsy's Law, unduly harassing of a sex crime victim. She proffered she had made "no promises whatsoever" to encourage Doe's testimony. This was not enough for defendant, who told the court he would "rather hear it from [Doe] on the record."

The trial court then ruled on defendant's recall request from the bench:

"THE COURT:  All right. Given the proffer that you have given and that the People have not promised her anything—I know they wouldn't have, you don't do that—and given that the witness herself has felt that your questioning was harassing, and she was very upset after having to come back and spend another day, the Court is going to rule that Marcy's Law does preclude her from having to come back to face these questions. I think they're very marginally relevant.
"MR. JACKSON:  Okay.
"THE COURT:  It doesn't take any money to comb your hair or to put nail polish on. I don't see how she could have received any benefit. I've already recalled the warrant. And she was very upset. And you don't have any means of getting her here. [¶] So I—I requested—excuse me—I've requested the DA to help you many times, but, hum, this is—this is going overboard. And I—I agree, that under Marcy's Law and under your proffer, when you said you didn't forget, that you don't have good cause to recall her."

On September 28, 2011, the jury, after deliberating less than an hour-and-a-half, found defendant guilty of all six counts of the information. The court, in a bifurcated proceeding that same date, found defendant had suffered the previous convictions alleged in the information.

The trial court subsequently sentenced defendant to a prison term of 14 years eight months. The court applied a number of sentence enhancements, but ultimately chose to strike one of defendant's prior serious felony convictions and so did not impose the 25-years-to-life term the people had requested under the three strikes law.

Defendant filed a timely notice of appeal. Although defendant did not have counsel below, he does so on appeal.

DISCUSSION

Defendant contends the trial court should have allowed him to recall Jane Doe for further cross examination and that its failure to do so violated his rights to a fair trial and to confront witnesses testifying against him.

" ' "[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, . . . to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law." [Citation.]' [Citation.]" (*People v. Ardoin* (2011) 196 Cal.App.4th 102, 118 (*Ardoin*).) The "right of confrontation is not absolute, however [citations], 'and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " (*Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1138–1139.) "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) The limit on the right can also be stated this way: an accused is guaranteed " 'only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ' " (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1265.)

Under California's Evidence Code, "[a]fter a witness has been excused from giving further testimony in the action, he cannot be recalled without leave of the court. Leave may be granted or withheld in the court's discretion." (Evid. Code, § 778.) In a similar vein, "[a] witness once examined cannot be reexamined as to the same matter without leave of the court, but he may be reexamined as to any new matter upon which he has been examined by another party to the action." (Evid. Code, § 774.) A trial court's denial of recall is reviewed for abuse of discretion. (*People v. Thomas* (1992) 2 Cal.4th 489, 542; *People v. Cooks* (1983) 141 Cal.App.3d 224, 327; *People v. Burton* (1961)

5

55 Cal.2d 328, 344, abrogated on other grounds by *People v. Brown* (1994) 8 Cal.4th 746 [refusal to allow further cross-examination during defendant's case in chief was within the trial judge's sound discretion].)

Trial courts do not violate a defendant's confrontation right by routine application of such " ' "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence" ' "; rather, an accused must exercise his right while complying with these rules. (*Ardoin*, *supra*, 196 Cal.App.4th at p. 118; cf. *People v. Quartermain* (1997) 16 Cal.4th 600, 623 ["notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352"].)

We conclude the trial court here did not abuse its discretion under the Evidence Code in denying defendant further cross examination of Doe, and we further conclude there was no constitutional violation as defendant was afforded a full opportunity to question Doe.

First, defendant questioned Doe at length. He witnessed first-hand whatever alleged change in testimony he claimed to have perceived and had ample opportunity to observe Doe's physical appearance and demeanor. He had three separate sessions questioning Doe. There was a four-day gap between the first two sessions and an hour-and-forty-minute lunch break between the second and third sessions. The trial court did not have to allow defendant a fourth session with Doe simply because defendant articulated supposedly "new" questions he could have asked earlier but did not. There would otherwise be no coherent limiting principle to keep a trial from continuing indefinitely. (See *People v. Marshall* (1996) 13 Cal.4th 799, 836 [on a defense motion to reopen, trial court may consider defendant's diligence and opportunities]; *People v. Cooks*, *supra*, 141 Cal.App.3d at p. 327 [defendant had ample time for questioning].)

Second, defendant did in fact question Doe about alleged changes in her testimony, hammering home in repeated questions that Doe had told one story to police

6

(defendant did not know her age and resisted sex) but had testified in court to another story (that defendant knew her age from the beginning and engaged in sex willingly). Defendant even conceded on the record he "was impeaching her on her statement." Defendant has never identified, or suggested how he would elucidate, any other supposed change in Doe's testimony.

Finally, the trial court did not need to credit defendant's rank speculation that Doe's combed hair, painted nails, and "thanks for nothing" remark to the prosecuting attorney suggested the prosecution had procured her testimony with gifts. Such speculation is not tantamount to an offer of proof sufficient to justify recalling a witness. (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1154 ["there was an element of speculation in the defense offer of proof"]; *People v. Foss* (2007) 155 Cal.App.4th 113, 127–128 [speculation and lack of specificity was inadequate to preserve the issue for consideration on appeal]; *People v. Conrad* (2006) 145 Cal.App.4th 1175, 1184 ["speculation insufficient to support claim of evidence loss"]; *People v. Eid* (1994) 31 Cal.App.4th 114, 126–127 [insufficient offer of proof when "based on nothing more than optimistic expectation"]; cf. *People v. Raven* (1955) 44 Cal.2d 523, 525–526 [sufficient offer of proof made to allow determination that trial court prejudicially erred in exercising discretion not to recall witness].) Defendant's speculation was particularly unconvincing given the arrest warrant required for Doe's presence. Indeed, that and Doe's scornful remark to the prosecuting attorney tended to show something quite different—that Doe did not wish to be in court or have any interactions with the prosecution. (See *Marshall*, *supra*, 13 Cal.4th at p. 836 [on motion to reopen, court considers "significance of the [new] evidence"].)

In sum, defendant had ample opportunity to question Doe and the court acted well within its discretion in denying his request to recall Doe for further cross-examination.

## DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.