Filed 3/21/23 P. v. Savelli CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DARRELL MICHAEL SAVELLI,<br><br>      Defendant and Appellant. | A164904<br><br>(Solano County<br>Super. Ct. No. VCR218358) |

Defendant Darrell Michael Savelli appeals a judgment convicting him of one count of oral copulation with a child under 10 years of age and four counts of lewd acts upon a child and sentencing him to an aggregate term of 27 years to life in prison. He contends his conviction must be reversed because: his speedy trial rights were violated by a substantial and unjustified pre-arrest delay; there was insufficient evidence that the offenses occurred in Solano County; and the court admitted irrelevant and prejudicial evidence. We find no error and affirm the judgment.

## BACKGROUND

By amended information, defendant was charged in count 1 with oral copulation of a child under 10 (Pen. Code,[1] § 288.7, subd. (b)) and in counts 2 through 20 with committing a lewd act upon a child (§ 288, subd. (a)). The

_____

[1] All statutory references are to the Penal Code unless otherwise noted.

offenses were alleged to have occurred between February 2009 and September 2010.

At trial, evidence was admitted that during the relevant time period, defendant was living with the then seven-year-old victim[2] and his father and grandmother at their home in Vallejo. The grandmother testified that defendant did not pay rent.

The victim testified that at some point while defendant was living with them, his father got a job at the Walmart in Fairfield. His father worked nights and he would go with defendant to drop off his father at work. On the ride home, defendant repeatedly sexually abused the victim. He detailed how, on more than 20 occasions, defendant orally copulated him and touched his breasts. He also remembered defendant kissing him on the lips.

The victim also testified that on one occasion, while in the car, defendant exposed his penis and forced the victim to sit on defendant's lap. On several other occasions while in their home, defendant touched his breasts and once, while forcing him to watch a pornographic movie, defendant ejaculated into a container and forced him to drink from the container.[3]

---

[2] The victim in this case was born biologically female. At the time of trial, the victim, then 19 years old, identified as male. Out of respect for the victim, we utilize his preferred pronouns.

[3] The jury was given a limiting instruction as to the testimony contained in this paragraph, discussed *post* at pages 10–12, which advised the jury that these previously undisclosed allegations could not form the factual basis of any of the 20 charges in this case but could be considered in assessing the relationship between the victim and defendant, the credibility and reliability of the victim's testimony and the thoroughness of the investigation.

The molestation lasted about six months until his father stopped working at Walmart or defendant moved out. The grandmother testified that father forced defendant to move out because he was tired of seeing defendant "laying on the couch."

In 2013, when the victim was eleven years old, he revealed the abuse to his grandmother. They then reported the abuse to the police, who arranged for victim to be interviewed by trained child abuse investigators. The tape recorded interview was played for the jury.

In the interview, the victim detailed the abuse that occurred in the car. He explained that defendant touched his vagina with his hand and tongue and forced him to touch defendant's penis. He also reported that defendant made him watch pornographic movies in their house. Defendant would touch his penis while they watched, but he did not touch the victim during those times. Defendant did, however, touch the victim on the side of his body by his rib cage.

At trial, the victim described the location of the abuse as in Vallejo or Benicia and testified, "We passed by a pool and . . . stopped in a parking lot across the street from a gas station and the parking lot we were staying at was a bit on a hill and there were also types of trucks and mobile homes on it." He believed the parking lot was on South Hampton Road. In the interview from 2013, the victim said he believed the abuse occurred in Vallejo and described the location as "up on a hill" across the street from a gas station and "there were mobile homes there." At the time, he thought the parking lot was on New Hampshire Road. A police detective described an area of Vallejo that had landmarks similar to the victim's description of the location of the abuse. On a hill was a parking lot, located across from a gasoline station, belonging to a mobile-home community where many motor homes and

trailers were parked. The street was not South Hampton but Fairgrounds Boulevard and Newell Street and the complex was called Newell Mobile Home Park.

The detective testified that after the interview in 2013, he attempted to find defendant but that "none of [the victim's] family who knew him knew where he had gone to." The detective "knew he was semi-transient or living out of a mobile home before that. So . . . I wasn't able to locate a good address." When the detective added that he "issued a warrant in the hopes that if he was stopped at some point for traffic, somebody would find him," defense counsel objected. The court sustained the objection and admonished the jury: "So, you've heard about this statement being given in 2013 . . . . And you're saying this is 2021 so what is the possible explanation. . . . [A] felony complaint in this case was filed in 2013. And it took a long time before anyone ever notified Mr. Savelli of that fact. Then this case has been around for years thereafter, reflect nothing more than the bureaucratic nature of the courthouse. [¶] So, . . . whether or not a warrant was issued, whether or not a complaint was filed, is not evidence of anything, just as I told you the fact that these allegations were made against Mr. Savelli is not evidence of anything you're hearing evidence. [¶] Now, when you go back and deliberate, you are free to discuss and weigh the passage of time between the alleged acts and the first reporting, you are free to argue whether or not that is relevant. But from that point forward to today's point, nothing is relevant about anything. There is no relevance to the fact that it is now eight years later. You're not to consider that fact against Mr. Savelli and you really shouldn't consider that fact against anyone."

Defendant was found guilty of counts 1 through 5, but acquitted of counts 6 through 20. Defendant was sentenced to 15 years to life on count 1

plus a determinate term of 12 years on the remaining counts. Defendant timely filed a notice of appeal.

## DISCUSSION

### 1. *Defendant's right to a speedy trial under the California Constitution was not violated.*

Under article I, section 15 of the California Constitution, "The defendant in a criminal cause has the right to a speedy public trial." The state constitutional right to a speedy trial attaches in a felony prosecution upon the filing of the complaint. (*Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, 945.) "When a defendant complains that this right has been violated because of an unreasonable delay between the filing of the complaint and his/her subsequent arrest, the defendant must first establish prejudice as a result thereof." (*Ibid.*) To meet this burden, a defendant must "affirmatively demonstrate prejudice." (*People v. Martinez* (2000) 22 Cal.4th 750, 767.) "No presumption of prejudice arises from delay after the filing of the complaint and before arrest or formal accusation by indictment or information." (*Ibid.*)

"If [a] defendant makes an adequate showing in that regard, the burden shifts to the People to justify the delay after which the court must balance the harm to defendant against the reasons for the delay in deciding whether dismissal of the prosecution is warranted." (*Shleffar v. Superior Court, supra,* 178 Cal.App.3d at p. 945.) Even a "minimal," prima facie showing of prejudice requires the prosecution to explain the reasons for the delay. (*Craft v. Superior Court* (2006) 140 Cal.App.4th 1533, 1540–1541.) The balancing test functions on a sliding scale: " ' "Even a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal." ' " (*People v. Mirenda* (2009) 174 Cal.App.4th 1313, 1327.)

"We review for abuse of discretion a trial court's ruling on a motion to dismiss for prejudicial prearrest delay [citation], and defer to any underlying factual findings if substantial evidence supports them." (*People v. Cowan* (2010) 50 Cal.4th 401, 431.) Moreover, " '[w]e may sustain the trial court's decision without embracing its reasoning.' [Citation.] If the court's ruling or decision is ' " ' "right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' " ' " (*People v. Mirenda, supra*, 174 Cal.App.4th at p. 1330.)

Here, the felony complaint was filed in July 2013. Defendant was not arrested until almost five years later, on April 20, 2018. Defendant's pre-trial motion to dismiss, filed on August 3, 2020, asserted that his state constitutional right to a speedy trial was violated by the prejudicial and unjustified delay between the filing of the felony complaint and his arrest. He argued that because he "was not given *formal* notice that he was even implicated in this crime until his arrest, . . . [he] had no reason to remember or document where he was or who he saw on what seemed to him to be any other average day in his life." (Italics added.) He also noted that at the time of his arrest, "he had been receiving mail at the same address for seventeen years" and had a state-issued California's driver's license which contained that address, but was not contacted by mail by the police.

In opposition, the People submitted a transcript of a phone call defendant made from jail after his arrest in which he acknowledged that he was aware of the warrant in 2016.[4] The prosecutor also submitted a

---

[4] Defendant's characterization of this call as just referencing a "rumor" as to an unspecified warrant is misleading. On the recorded call defendant states, "when I - I talked to my lawyer before court . . . she asked me - she

declaration indicating that she spoke with the investigating officer who represented he made efforts to execute the arrest warrant in 2013 but was told by defendant's contacts that he had left the area. The detective left the Vallejo Police Department shortly thereafter. Finally, the defendant was not arrested at the address on his driver's license and the address where he was arrested was not one of the seven addresses associated with defendant in the law enforcement database.

The trial court acknowledged that the "delay is frustrating, particularly in light of the vagueness of the allegations" but concluded, on balance, that "dismissal was not the appropriate remedy under the circumstances."

We agree that the delay in serving the warrant in this case is frustrating. The People's justification for the delay, while not unreasonable, is not particularly strong. Defendant bears responsibility for some of the delay, as he admitted actual notice of the warrant for his arrest, and the nature of the allegations, in 2016. Prior to 2016, the People did attempt to find defendant, including by inquiring with his acquaintances, but they reported defendant had left the jurisdiction. However, there is no record of any effort to confirm that report, or to investigate the numerous potential residences for defendant available in the police database. In 2013, the investigating officer apparently interviewed family who did not know of defendant's whereabouts, and felt that without a good address, all he could do was issue a warrant. The People's investigative efforts were hardly comprehensive, but were they insubstantial? Given defendant's failure to

---

was like, 'Well the - the, uh, [t]he warrant came out in 2013. So when - when did you find out about it?' I said, 'I didn't find out about it until 16.' " He clarified that it was the warrant for the current charges and repeated, "I told her . . . I didn't know about [it] until 16" before stating, "but anyways she told me not to really talk about it on the phone."

demonstrate any actual prejudice, discussed below, we need not resolve that question to find the trial court did not abuse its discretion in denying the motion.

"The showing of actual prejudice which the law requires must be supported by particular facts and not . . . by bare conclusionary statements." (*Crockett v. Superior Court* (1975) 14 Cal.3d 433, 442.) Defendant did not submit a declaration detailing his memory loss but relied instead on counsel's assertion, quoted above, that absent *formal* notice of the charges he would have no reason to remember what he did on any given day. The abuse alleged in this case, however, did not occur on a single day and the circumstances were not, contrary to defendant's argument, vague or nondescript. Rather the abuse was alleged to have occurred over a defined period of more than a year, on numerous nights during the return trip from Walmart, and at a place described by the victim in some detail. Without more, there is no reason to believe defendant would not remember regularly driving the victim's father to work while he was living in his home. Furthermore, defendant has not identified any reason this information could aid in his defense, such as facts suggestive of an alibi. (*People v. Boysen* (2007) 165 Cal.App.4th 761, 778 [lengthy 24-year delay resulted in death of material witnesses and exculpatory evidence, e.g., as to alibi]; cf. *People v. Conrad* (2007) 145 Cal.App.4th 1175, 1184–1185 [during relatively short delay, sole witness who could have provided specific, exculpatory testimony passed away].) Similarly, defendant does not explain why the details of any given day he was alleged to have watched pornographic movies with the victim in their home materially affect his defense. Nor has he identified any efforts to refresh his recollection. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 250 [A "court need not accept a conclusory statement that the lack of recall demonstrates prejudice where

8

no effort has been made to ascertain the basis for the charge. Lack of recall may establish prejudice, but only on a showing that the memory loss persists after reasonable attempts to refresh recollection."].)

On appeal, defendant adds that he was also prejudiced by the delay because the victim's memory was compromised by the passage of time. But the victim's statements were recorded in 2013 and played for the jury. To the extent his memory had faded or was inconsistent with regard to minor details, the jury was capable of comparing and evaluating his statement and trial testimony. As the People note, the inconsistencies in the victim's testimony arguably helped rather than harmed the defense as it allowed the defense to challenge the reliability of the victim's testimony. Defendant, again, fails to explain specifically what information was unavailable to him at trial because of the delay.

Accordingly, the trial court did not abuse its discretion in denying defendant's motion to dismiss.

### 2. *Substantial evidence establishes that venue was proper in Solano County.*

The proper venue for the prosecution of a criminal offense is in the superior court of the county where the crime was committed. (Pen. Code, § 777; *People v. Posey* (2004) 32 Cal.4th 193, 199.) "[V]enue is a question of law for the court, to be decided prior to trial." (*Posey,* at p. 201.) The prosecution bears the burden of establishing venue by a preponderance of the evidence. (*Id.* at p. 218.) We independently review the trial court's determination of venue, but uphold the trial court's factual findings if supported by substantial evidence. (*People v. Betts* (2005) 34 Cal.4th 1039, 1055.)

Prior to trial, defendant moved to dismiss the charges on the ground that the prosecution had failed to establish at the preliminary hearing that the crimes occurred in Solano County. The court denied the motion, finding

9

that "there was sufficient evidence for the magistrate to conclude that it happened in Solano County, not necessarily Vallejo," and that "there was enough specificity here to support the magistrate's finding that this occurred in Solano County and Solano County has jurisdiction."

On appeal, defendant argues "the evidence at the preliminary hearing was insufficient, even by a preponderance standard, to establish that the offenses in fact occurred in Solano County." We disagree.

At the preliminary hearing, the police detective testified that he was present at the victim's interview in 2013 when he described the location of the molestation to be a "hill," reached after leaving the freeway, where one "could see motor homes" and was "across the street from a gas station." During the same interview, the victim said the molestation took place near his home in Vallejo on the way home from the Walmart store in Fairfield where his father worked. Finally, the detective testified that while there was no New Hampshire Street in Vallejo, there was a Hampshire Street.

The detective's testimony is sufficient to establish, by a preponderance of the evidence, that the abuse occurred in Vallejo. In addition, as the prosecution noted in opposition to defendant's motion to dismiss, both Fairfield and Vallejo are in Solano County and, absent any evidence of a major deviation, any stop on the logical route from one city to another is in Solano County. This led the trial judge to observe that the odds that the abuse occurred in a different county was so slim as to be "metaphysical." Accordingly, substantial evidence supports the court's determination that the

10

Solano County Superior Court was the proper venue for the criminal prosecution.[5]

### 3. *Defendant was not prejudiced by the admission of previously undisclosed or irrelevant evidence.*

Under Evidence Code section 352, the court may, in its discretion, "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." " ' "Unless the dangers of undue prejudice, confusion, or time consumption " 'substantially outweigh' " the probative value of relevant evidence, a section 352 objection should fail. [Citation.] . . .' " [E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 439.)

---

[5] The People argue for the first time on appeal that venue was also proper in Solano County under section 783, which provides, "[w]hen a public offense is committed . . . on a motor vehicle . . . , the jurisdiction is in any competent court, through, on, or over the jurisdictional territory of which the . . . motor vehicle . . . passes in the course of its . . . trip, or in the jurisdictional territory of which the . . . trip terminates." This is correct. (See *People v. Dawkins* (2018) 24 Cal.App.5th 698, 704 [venue proper in San Mateo County where train originated in San Mateo County even though offenses occurred in different county]; *People v. Jackson* (1983) 150 Cal.App.3d Supp. 1, 17, overruled on a different ground in *People v. Posey*, *supra*, 32 Cal.4th at p. 205, fn. 5 [venue proper in Los Angeles County where molestation occurred in motor vehicle at unknown location on trip spanning both Los Angeles and Ventura counties].)

A defendant's failure to raise an Evidence Code section 352 objection at trial forfeits the issue for purposes of appeal. (*People v. Valdez* (2012) 55 Cal.4th 82, 138; Evid. Code, § 353 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion."].) "The objection requirement is necessary in criminal cases because a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.' [Citation.] 'The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.' " (*People v. Partida* (2005) 37 Cal.4th 428, 434.)

Defendant makes three arguments regarding the court's admission of assertedly unduly prejudicial evidence under section 352.

### a. Previously Undisclosed Acts

First, defendant contends the court erred in admitting the victim's testimony at trial regarding previously undisclosed and uncharged acts by defendant. Defendant acknowledges that counsel did not lodge a contemporaneous objection to the victim's testimony but contends the court erred by failing to strike the testimony once the issue was raised. We disagree.

12

As defendant acknowledges, the parties discussed this evidence several times with the court. When the matter was first raised, the court asked what remedy counsel was seeking and defense counsel responded, "I would ask the court for a limiting instruction, as well or to exclude that testimony. Or a limiting instruction in some type of way so the jury is aware of that late discovery, as well as this is the first time that counsel or myself have heard of this information. Or I would ask to allow defense to get into some other areas." The court confirmed, "So you're asking maybe for some kind of instruction?" Counsel responded, "That's correct." Later, the court raised the issue again, asking the parties for input on fashioning the limiting instruction. Finally, the court and counsel spent considerable time on the record discussing defense counsel's proposed instruction. Ultimately, the court gave the following limiting instruction as to this testimony: "Certain statements that [the victim] offered during his testimony were made for the first time here during this trial. Neither the prosecution nor the defense knew of those allegations before trial. [¶] Specifically: Number 1, [the victim] had never before alleged that while at his home with Mr. Savelli that Mr. Savelli masturbated into a Schwan's container then made [the victim] drink the contents. [¶] Number 2, [the victim] had never before specifically alleged that while he and Mr. Savelli were in a vehicle, that Mr. Savelli had removed his penis from his pants and then placed [the victim] on his lap. [¶] Number 3, during his testimony here in court, [the victim] described several incidents of inappropriate sexual physical acts and touching of [the victim] by Mr. Savelli in the Laurel Street home. [¶] Now, all 20 charges in this case were, in fact, based on alleged conduct that occurred in the car, not in the home. Now, because those allegations were not known to the court or to the parties prior to trial, those allegations cannot be the factual basis for any of the 20

13

charges in this case. [¶] There's a long legal complicated reason for that, we do preliminary hearings early on so everyone knows what the allegations are here. So, because these allegations came up for the first time during this trial, you cannot find Mr. Savelli guilty of any of the 20 counts here based on those specific incidents. [¶] Now, you can, but are not required to, consider these new allegations in assessing the general circumstances of the relationship between [the victim] and Mr. Savelli in assessing the credibility and reliability of [the victim's] testimony in general, or in assessing the quality and thoroughness of the law enforcement investigation in this case."

On appeal, defendant argues that the court's limiting instruction "did not dissipate the prejudice" but instead "only served to emphasize it." However, defendant's argument on appeal that the evidence should have been stricken was forfeited by his failure to object, below. In any event, as indicated in the instruction, the evidence had some probative value, which the trial court reasonably concluded would be mitigated by the instruction, which "we presume the jury faithfully followed." (*People v. Ervine* (2009) 47 Cal.4th 745, 776; see also *Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1081 [in evaluating evidence under section 352, trial court may consider, in its discretion, whether "based on the particular facts, that the jury can follow a limiting instruction about how the evidence in question may be used"].)

### b. *Evidence Defendant was Semi-Transient, Not Paying Rent, Had a Warrant out for his Arrest*

Defendant also contends the trial court erred in admitting the testimony of the victim's grandmother that defendant did not pay rent and that her son was tired of seeing defendant "laying on the couch" and, relatedly, the detective's testimony that defendant was "semi-transient." Prior to trial, the court indicated that evidence regarding whether defendant

was paying rent to the victim's family was irrelevant. Defense counsel, however, did not object when such testimony was given in violation of the court's order. When the prosecutor briefly touched on this subject in closing argument, the court instructed the jury sua sponte as follows: "[The prosecutor] made a passing reference to Mr. Savelli living rent free. That's not relevant to anything. . . . I don't think [the prosecutor] intended it, but that could have been interpreted as a bit of slight, someone's not paying rent, therefore maybe they're a deadbeat, therefore maybe there's character things, you haven't heard any of that evidence. You have heard no explanation of that. And whether or not he was paying rent or not has nothing to do with anything unless there's something you think specifically does. But . . . you should not consider that as character evidence or as anyway disparaging whether or not anyone's paying rent." While this instruction was far from perfect, counsel forfeited any challenge to it, or the underlying testimony, as prejudicial. Furthermore, any emotional bias such banal information may have evoked was slight in comparison to shock and disgust other evidence regarding the charged offenses would have inspired. (See *People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [potential for prejudice is decreased where testimony "was no stronger and no more inflammatory than the testimony concerning the charged offenses"].) It was no abuse of discretion to conclude that it could effectively be addressed with a limiting instruction. (*Phillips v. Honeywell Internat. Inc., supra*, 9 Cal.App.5th at p. 1081.)

Defendant also challenges the admission of the detective's testimony that defendant had a warrant out for his arrest, but the court sustained defense counsel's objection and struck that testimony. The court also advised the jury that the warrant did not mean anything, that no one notified defendant about the felony complaint, and that the case was unresolved for

years because of the "bureaucratic nature" of the courthouse. Again, we presume the jury followed the court's limiting instruction. (*People v. Ervine, supra,* 47 Cal.4th at p. 776.)

### c. *The Detective's Testimony Regarding Location of Alleged Sexual Abuse*

Finally, defendant contends the court erred in admitting the police detective's testimony regarding the location of the abuse. He argues the evidence was speculative and thus not relevant and unduly prejudicial insofar as it falsely bolstered the victim's credibility on this point. Prior to trial, defendant raised this issue by in limine motion. The court held that the detective could not give his opinion regarding where the abuse happened but could testify to the features or markers of a particular location in the county. Defendant does not challenge the court's in limine ruling but argues that the "phrasing of the prosecutor's questions" to the detective make it "unclear" whether the detective's "testimony could be deemed to be about specific markers, which the court held would be allowed, or was in fact an opinion about whether the location was consistent with [the victim's] description of the location, which the court held would not be admissible." Again, however, defendant forfeited the issue by his failure to object to the detective's testimony in this regard. Such an objection would have allowed the court to clarify any possible confusion as to the relevance of the detective's testimony.[6] In any event, having reviewed the detective's testimony, we find it consistent with the court's in limine ruling.[7]

---

[6] For this reason, defendant's contention that an objection would have been futile is also unavailing.

[7] As set forth above, the potential prejudice associated with the admission of evidence to which no objection was lodged was largely eliminated by the court's admonitions. Accordingly, we do not address

## DISPOSITION

The judgment is affirmed.

WHITMAN, J.*

WE CONCUR:

STREETER, Acting P.J.
BROWN, J.

---

defendant's contention that a series of prejudicial errors, cumulatively, "rendered the trial fundamentally unfair."

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.